HAAB *v.* SCHNEEBERGER.

WILLS—CONSTRUCTION—ESTATES DEVISED.

A devise to testator's wife "to be enjoyed by her as long as she shall remain my widow," and in case of her marriage the land to go to testator's daughter for life, remainder to her issue, gives the widow a life estate terminable upon remarriage, the daughter a life estate after the termination of the widow's estate either by marriage or death, and the daughter's children a vested remainder in fee.

Appeal from Washtenaw; Kinne, J. Submitted January 11, 1907. (Docket No. 24.) Decided March 26, 1907.

Bill by Caroline Haab against Joseph Schneeberger, Catherine Curry, and others, for the construction of a

will. From a decree for complainant, defendants Schnee-
berger and Curry appeal. Affirmed.

John Schneeberger died December 28, 1877, aged 77
years, leaving a last will and testament, executed January
19, 1875. He left a widow, Caroline, aged 66 years, a son
Joseph, the children of a deceased son John, and the com-
plainant, his daughter, as his heirs at law. The will
reads as follows:

" *First.* I give and devise to my wife, Caroline, my farm
in the township of Freedom, county and State aforesaid,
consisting of two hundred acres, to be enjoyed by her as
long as she shall remain my widow. In case of her mar-
riage my daughter Caroline shall take the said farm, to
be enjoyed by her during her life, and after her decease
the said farm shall be divided among her issue, share and
share alike.

" *Second.* I give and bequeath to my said wife all my
personal estate on my said farm at the time of my death,
to be used and enjoyed by her as long as she shall remain
my widow. In case of her marriage such property shall
pass to my daughter Caroline absolutely.

" *Third.* I give and bequeath to Leonard Gruner, of
the city of Ann Arbor, all the monies, evidences of
debt of all kinds, viz.: Money on hand, money loaned
and outstanding at the time of my death; and the probate
court of the county of Washtenaw shall provide for a suc-
cession of trustees and require them to give the necessary
security for the faithful performance of their duties, and
they shall be entitled to reasonable compensation for their
services, upon trust; that he, the said Gruner, and his
successors shall pay the interest of such sums to my wife,
Caroline, or authorize and empower her to receive and
take the same to her own use as her separate estate dur-
ing her life, subject to the conditions hereinafter made,
and after her decease the said sums of money shall be
divided into three parts and distributed as follows: one-
third part to be equally divided among the issue of my
son John F. Schneeberger (now deceased), one-third part
to be divided equally among the children of my son Jo-
seph Schneeberger, and one-third part to be divided equally
among the issue of my daughter, Caroline Haab.

" *Fourth.* I hereby provide that my said wife, Caro-
line, in case of her marriage, shall elect whether she will

take her dower in my estate or the interest of the money in trust as herein provided. In case she should elect to take her dower, the said trust shall terminate and the said moneys shall be divided among my grandchildren as herein provided; otherwise, the interest shall be paid her as provided in the third provision herein."

Of the 200 acres, 80 were under cultivation. The will was admitted to probate, the estate settled, and an order of the probate court made adjudging that "the said residue of the said personal estate and said pieces or parcels of land be, and the same are, assigned to the said devisees and legatees according to said last will and testament." His widow did not marry, and died in 1905. Defendant Joseph then petitioned the probate court for the appointment of an administrator de bonis non with will annexed, claiming that the farm and the personal property thereon are intestate property, and belong to the heirs of John Schneeberger. The testator's daughter, Caroline, married in 1870, and had five children, two of whom were living at the time of the publication of the will. She and her husband lived upon the farm, her husband leasing it and paying rent, until his death, in 1903. The widow lived with them. This lease was executed by Mr. John Schneeberger and complainant's husband February 11, 1872, and was to continue during the life of Mr. Schneeberger and his wife, but was to terminate if the daughter Coroline should die before the death of her father and mother.

After the presentation of the petition by Joseph to the probate court, complainant filed this bill to obtain a construction of the will. Issue was duly joined, proofs taken, and a decree entered holding:

"That the complainant, Caroline Haab, is entitled to the full use and enjoyment of the said farm for and during the remainder of her lifetime and of all the said farm personalty absolutely; that the devise of the said farm to the issue of complainant became and was vested in such issue on the death of the testator, subject to open up and let in after-born children of the complainant."

Some years before executing the will the testator deeded 120 acres to each of his sons, John F. and Joseph, and gave them other property from time to time.

*E. B. Norris* (*M. J. Cavanaugh*, of counsel), for complainant.

*J. O. Newberry* and *J. W. Bennett*, for appellants.

GRANT, J. (*after stating the facts*). It is apparent that the testator intended to die testate as to all his property. The will mentions and disposes of all his personal and real estate. It makes devises and bequests to his widow, to his daughter and grandchildren. The will gives his widow the income from all his estate, both real and personal, so long as she remains unmarried, and of the personalty, devised in trust, during her life. It is immaterial what name we attach to the estate devised to the widow. It seems unimportant whether we call it an estate during widowhood, or a life estate terminable if she should marry. It is an estate of which she was given the immediate possession and enjoyment, to be used and enjoyed by her for life, provided she did not marry, and to terminate provided she did marry. It is the contention of the appellant defendants that the testator intended to devise no interest to his daughter and her children, unless his widow should remarry. It is significant that the only provision made for his daughter is the life estate in the land and the personal property upon the farm. The complainant had always lived at home, while his two sons left upon attaining their majority. He intended that she should live with, and take care of, him and his wife as long as they should live. The lease executed between the testator and complainant's husband provided for this. He had given her nothing during his lifetime, while it is conceded that he had given to each of his sons 120 acres of land, a team of horses each, and other property. Laying aside the surrounding circumstances, however, which were shown aliunde, the question is presented: Does the

intent of the testator appear from the four corners of the instrument? If it does, the circumstances aliunde are of no consequence. As already stated, his intention to provide for his daughter by a life interest in the farm and the property thereon, after the termination of his wife's estate, is manifest. This being so, it would seem to follow that the method by which that estate devised to his wife was terminated is of little consequence. The probability of her marriage after she was 64 years of age was very remote. Widows seldom marry after that age. This fact is recognized as of some importance in some of the early authorities. If the testator had intended to devise to his living son, Joseph, and the heirs of his deceased son, John, an interest in the farm, either as a contingent or vested remainder, he naturally would have inserted some provision showing that intent. I cannot escape the conclusion that the testator supposed he had disposed of this farm to his widow, his daughter, and his daughter's children. His sons were the children of his first wife, who must have died when they were young. Complainant was the daughter and only child of his second wife.

Jarman, in discussing vested and contingent remainders, says:

"Where a testator makes a devise to his widow for life, if she shall so long continue a widow, and if she shall marry, then over; the established construction is that the devise over is not dependent on the contingency of the widow's marrying again, but takes effect, at all events, on the determination of her estate, whether by marriage or death." 2 Jarman on Wills (5th Am. Ed.), 414.

In *Luxford* v. *Cheeke*, 3 Lev. 125, the devise was "to the wife for life if she does not marry; if she does, that his son, Humphry, shall enter and have the land in tail." She did not marry, and the court held that the devise was an estate tail with remainders, and that "the words shall be read and taken thus; if she marry, Humphry to enter presently; if she does not marry, then Humphry shall have, hold, and enjoy them to him and the heirs males of

his body, with remainder over." The same will was before the court in *Brown* v. *Cutter*, Raymond, 428, and it was there held that there was no contingent remainder, but an estate vested in the testator's son to take effect in possession upon the marriage or death of the widow.

In *Browne* v. *Hammond*, Johns. Eng. Ch. 210, the testator devised real estate and bequeathed all his residuary personal estate to his wife for her sole and separate use so long as she continued to be his widow; but, if she should marry again, his will was that the said property was to be sold and the proceeds of such sale to be equally divided between his children, their heirs and assigns, share and share alike, as tenants in common. At the date of the will he had two children, named Elizabeth and Mary Anne. Elizabeth died in the testator's lifetime, leaving two children, infants, who were made defendants. The widow died without having remarried. It was held that " the devise or bequest over, though in terms made upon the marriage of the donee of the preceding estate, is to be extended by implication, so as to take effect on the determination of that estate by death."

Under a similar provision in *Underhill* v. *Roden*, L. R. 2 Ch. Div. 494, decided by the chancery division of the high court of justice in England, it was held that, the widow having died without remarrying, the gift over of the real estate took effect upon her death. The court in that case quoted with approval the decision in *Browne* v. *Hammond*, supra, and also the following language in *Eaton* v. *Hewitt*, 2 Drewry & Sm. 184, 192:

" It is a rule now well established that where a testator gives to a woman a life interest if she so long remains unmarried, and then directs that in the event of her marrying the property shall go over to another, although according to the strict language, the gift over is expressed only to take effect in the event of the marriage of the tenant for life, the gift over is held to take effect, even though the tenant for life does not marry."

In *Metcalf* v. *First Parish in Framingham*, 128

Mass. 370, the provision in controversy was the following clause of the testator's will:

"I give and bequeath unto George P. Metcalf, in trust and confidence, however, one hundred shares of the stock of the Pittsburg, Fort Wayne and Chicago Railroad Company, for the benefit of Nancy Green, sister of my deceased wife, and William Green, husband of said Nancy, for and during their natural lives, as follows: *First*, during the life of said Nancy, the net income of the same shall be paid over semi-annually to said Nancy. In case said Nancy should die before said William, then at the decease of said Nancy said trustee shall transfer one-half of said stock in equal parts to said Association and said Home. The income of the remainder shall be paid to said William as aforesaid during his natural life. *Second.* In case said William should die before said Nancy, then at the decease of said Nancy the whole of said stock shall be transferred in equal shares to said Association and said Home, and said trust estate shall cease."

The conclusion reached by the court, in an opinion by Chief Justice Gray, is thus stated:

"The result is, that the legal effect of the 10th article is to create, first, an equitable estate for life in the wife in the whole fund; second, an equitable estate for life in the husband in one-half of the fund; and, third, subject to these equitable life estates, a vested remainder in the whole fund in the charities."

The court there stated the settled rule in England to be:

"A devise or bequest to a widow for life, if she shall not marry, and, if she shall marry, then over to another person, gives the remainder to him, if she dies unmarried."

Similar language of a testator in *Bates* v. *Webb*, 8 Mass. 458, was held to convey a vested remainder.

Where the provision of the will was:

"I give and bequeath unto my beloved wife, Mary Resler, the whole of my estate, both real and personal, during her widowhood, or in other words, while she bears my name, but if she chooses to marry then it is my wish

that the whole of my estate, both real and personal, shall be given to my daughter, Eve Resler, and her heirs forever,"

—it was held that the devise was during her widowhood with a vested remainder to the daughter. *Farmers' Bank of Alexandria* v. *Hooff*, 4 Cranch, C. C. (U. S.) 323. It is there said:

"The estate is expressly during her widowhood; and at the termination of that estate, it is as expressly given to his daughter in fee. According to the literal construction of the will, the devise to the daughter was to take effect only upon the marriage of the widow, an event which might never happen, and if that strict construction could be given to the will, the remainder to the daughter would be contingent. But would such a construction be consistent with the intention of the testator?"

Our conclusion, therefore, is that the testator by clause 1 of his will devised the entirety of the land. Upon his death the widow took a life estate terminable upon remarriage, his daughter took a life estate after the termination of the widow's estate, either by marriage or death, and the children of the daughter took a vested remainder in fee. If it were permissible to consider the facts and circumstances under which this will was executed, there could be no possible doubt as to the intention of the testator. We said, speaking through my Brother McAlvay, in *Foster* v. *Stevens*, 146 Mich. 142:

"In the construction of wills no hard and fast rule can be applied to all cases alike. The peculiar facts and circumstances of each case must be considered, and from them the court must determine the rules of construction to be adopted."

The will made no provision for his son, Joseph, but only for his children. His son, John, died years previous to the making of the will, and the final distribution of the trust estate is the only provision made for his children. This would show an unequal distribution of his property. The conceded facts are that when his sons married they

left his home and started in the world for themselves. The father gave to each a farm and considerable personal property. He had given his daughter nothing. When these conceded facts are considered, the will, as above construed, resulted in an equal distribution of his property. We are not prepared to say that these facts and circumstances might not be considered in ascertaining the intent of the testator. Inasmuch, however, as we have reached our conclusion from the "four corners" of the instrument, it is unnecessary to determine the question.

The decree is affirmed, with costs.

McALVAY, C. J., and BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.