HALE ET AL. *v.* NEILSON ET AL.

[72 South. 1011.]

1. QUIETING TITLE. *Burden of proof. Wills. Estates created. Life estate. Constructions.*

Complainants filing a bill to remove cloud from title, bear the burden of their bill and must necessarily prevail upon the strength of their own title, and not upon the weakness of the title of their adversary.

2. WILLS. *Estate created. Life estate.*

Where by will a testator devised all of his estate to his wife so long as she remained his widow, but provided that if she married she should have one-half thereof during life and the remainder to her children, but, if there were no children then to the testator's relatives, and that if she married, one-half of the estate should immediately go to his same relatives. In such case the widow did not take a conditional fee, but at best a mere life estate and on her death without children her relatives took nothing.

3. WILLS. *Estates created. Life estates.*

Such will although it devised the remainder only on a condition which never happened to wit: the widow's remarriage, passed the estate on her death to the testator's relatives named in his wills.

4. WILLS. *Construction. Presumptions.*

Where every expression in the will manifests an intention on the part of a testator to dispose of all his estate, the presumption arises that he did not intend to die intestate as to any part of it, and his will if possible will be so construed.

APPEAL from the chancery court of Tallahatchie county.

HON. JOE MAY, Chancellor.

Bill by Mrs. Pearl Marks, Mrs. Mary Neilson and others, against C. H. Hale and others. From a decree overruling a demurrer to the bill, defendants appeal.

This cause originated in the chancery court of Tallahatchie county by bill exhibited by Mrs. Pearl Marks et al., appellees herein, against the appellants, seeking to remove an alleged cloud upon certain real estate

which appellees claim to have inherited from the widow of one C. A. Neilson, deceased. A demurrer was interposed to the bill and by the court overruled. From the decree overruling the demurrer, appellants, as defendants in the court below, prosecute this appeal.

Inasmuch as this case presents for construction the last will and testament of C. A. Neilson, we here set out in full the will, with codicil, which is in the following language:

"I, Charles A. Neilson, a citizen of the county of Tallahatchie, state of Mississippi, being of sound disposing mind and memory and more than twenty-one years of age, do hereby make, ordain, publish and declare this my last will and testament hereby revoking all others heretofore made by me.

"Item 1. It is my desire that all my just debts and funeral expenses be paid as soon after my death as practicable.

"Item 2. I devise and bequeath all of my estate, both real and personal to my beloved wife, to have, to hold and enjoy the same as long as she continues my widow.

"Item 3. It is my will and I so direct that in the event of the marriage of my widow, that she retain to her own separate use, benefit and behoof, one-half of my said estate, both real and personal, during her natural life, and upon her death, should she leave surviving her any child, or children or descendants of them, I devise and bequeath to such child or children or descendants of them the said half so to be retained by my wife during her natural life, but should she die not leaving any child or children or descendants of them I bequeath and devise said last mentioned half to the persons hereinafter mentioned in the 4th item of this will, to be divided among them in the proportion therein provided for the division of said half to be given up by my wife upon marriage as aforesaid.

"Item 4. In the event of the marriage of my widow, I devise and bequeath one-half of my estate, both real

and personal, to the following persons, in the following proportions, to wit, one-fifth of said half each to my sisters, Annie F. Symons and Catherine C. Hopkins, my niece, Annie Little, my nephew, Walker Neilson; and one-tenth of said half each to my nephews, William Covington and Benjamin Covington, to have and to hold unto themselves and their respective heirs in fee simple.

"Item 5. It is the full meaning and intent of this my last will and testament that my beloved wife shall hold and enjoy all of my estate during her widowhood, in case she marries, that one-half of my estate be divided and disposed of among my said sisters, niece, and nephews as specified and directed in item 4 of this will; that my wife retain during her natural life the other half of my estate, and that in case my wife die leaving a child or children or their descendants surviving her, the last mentioned half of my estate shall be divided between my said sisters, niece, and nephews in the same manner and proportions as directed in said item 4 of this will for the division of said half so to be given up by my wife in case of her marriage.

"Item 6. I hereby nominate, constitute and appoint my beloved wife, Julia A. Neilson, the executrix of this my last will and testament and I hereby expressly direct that she be not required to execute any bond as such executrix and that she be not required to execute any bond for the preservation of said estate or any part of it.

"Signed, sealed, published, and declared this the 31st day of March, 1879.

"[Signed] C. A. NEILSON. [Seal.]

"The above and foregoing last will and testament of Charles A. Neilson was this day signed, sealed, published, and declared by the said Charles A. Neilson to be his last will and testament in our presence and each of us signed the same as witnesses at the request of said

Charles A. Neilson in his presence and in the presence of each other.

"This the 31st day of March, A. D. 1879.

"James McClain.

"U. B. Mitchell.

"W. C. Mitchell.

"This codocil made in addition to and in modification of my last will and testament dated 31st day of March, 1879.

"Item First. I will and bequeath to John W. Johnson, a minor, living with me my black mare named Mollie, and her two colts, named Sallie and Dewdrop, and their future offspring, also my cow named Mattie and calf and their future offspring, also Crowder cows, half Holstein heifer and her future offspring.

"Item Second. It is further my will and I so direct that said John W. Johnson take of my estate equally with my brothers and sisters, that is to say, he and they are to have my estate, share and share alike as provided in my said last will for my brothers and sisters, except that the said John W. Johnson is not to share in any of my stock except as provided in the first item of this codicil.

"Item Third. It is further my will and I so direct that if said John W. Johnson die before he arrive at the age of twenty-one years, the provisions made for him above in this codicil shall be divided equally between my half-brothers and sisters, to-wit: James C. Neilson, Sallie D. Neilson, John A. Neilson, Sophia A. Neilson (now Mrs. Sophia A. Lewis) they to share and share alike.

"I also give to my wife, Julia A. Neilson, in addition to the provision made in my will Mag's heifer, Callie and Laura and their future offsprings and one mare Zana and her future offsprings. [Signed] C. A. Neilson.

"Witness:    George G. Harvey.

"William R. Henson.

"W. D. Watson."

Mr. Neilson died in 1907, leaving his widow, Mrs. Julia A. Neilson, as a devisee and one of the chief beneficiaries of his estate, and, had there been no will, his said widow would be his sole heir at law. Mrs. Julia Nielson died intestate in the year 1913, leaving appellees as her sole heirs at law. The complainants in this case, then, are the blood relatives of the widow and exhibit this bill against the other devisees named in the will of Mr. Neilson, challenging their right, title, and interest in any of the lands devised. There are two contentions or views pressed by counsel for complainants: First, that the testator devised his widow the fee in these lands subject to be divested, however, upon her remarriage; second, that if the testator did not devise a conditional fee to his wife, he did bestow a life estate conditioned to be divested upon remarriage, to the extent and in the way expressly provided in the will; and that as to the remainder he died intestate, leaving his widow as sole heir, and, since she did not remarry, both the life estate and remainder were merged in her. The widow in fact did not remarry. There is another, and what might be termed a third, contention that, conceding that the testator made an attempt to dispose of the remainder, the language employed by him was and is ineffectual as disposing of the fee, and accordingly this fee is cast by our laws of descent upon the widow.

It is the contention of appellants that the widow took at best a life estate subject to be limited as to one-half by remarriage; that the widow took an estate *durant viduitate;* that the will as a whole gives evidence of a clear intention to regard the brothers and sisters of the testator and John W. Johnson, the minor living with him, as objects of his bounty and devisees as to the remainder in fee; that, the life estate of the widow having now determined, the devisees, blood relatives of the testator and not the blood relatives of the widow, are now the absolute owners of the subject of this litigation; and that, even if they are not named as devisees express-

ly upon the death of the widow, they are certainly devisees by necessary implication.

*Frierson & Hale, Dinkins & Caldwell,* for appellant.

*Julian C. Wilson, Wm. Baldwin* and *Woods & Kuykendall,* for appellee.

STEVENS, J., delivered the opinion of the court.

The complainants in the court below, bearing the burden of their bill, must necessarily prevail upon the strength of their own title, and not upon the weakness of the title of their adversary. To maintain this suit they must be regarded as having inherited the lands in question from Mrs. Julia A. Neilson, the widow of the testator, whose will is here brought under review. Did then Mrs. Julia A. Neilson own an estate of inheritance. We think not. Before entering the mystic maze of authorities on wills similar to the one in question, we read this will from first to last in an endeavor to find and to appreciate the intent and purpose of the testator, to gather from the whole will what he meant to say and do. Looking to the whole instrument, including the codicil, and giving due regard to every expression, we are convinced beyond doubt that Mr. Neilson intended to give his wife the full use and enjoyment of his estate so long as she remained his widow, and that is to say, so long as she remained unmarried, and, at most, for her natural life. So long as she bore the name of Neilson she was to enjoy the estate of Neilson, but at all times her estate was a qualified and limited estate. If she should remarry, then it is clear from the express language of the will that her life estate in the whole was cut down to a life estate in one-half. The will as a whole convinces us that the testator regarded his brothers and sisters, close blood relatives of his, as objects of his bounty; and the codicil shows clearly that the minor, who was living with him as a member of his household,

was to be the recipient of his gracious favor. Mr. Neilson was evidently attempting to dispose of his entire estate; he thought he was effectually doing so. He had no children. If he provided for his beloved wife during the balance of her natural life, he evidently felt that he would be discharging toward her his full moral and legal obligations. She was, accordingly, to have the full and unrestricted use and enjoyment of his estate so long as she remained unmarried, but upon remarrying, and thereby acquiring a new and independent source of income, her life estate would be cut down. If she did not remarry, she was to use the entire property until her death. And from a practical and business viewpoint, what higher estate can one have in a plantation than the full and complete use, the entire usufruct, for one's natural life? The only additional privileges would be the right of devising or passing on the title to others, and in this case would mean the right of the widow to bestow the title upon those who were not regarded by the testator as special objects of his favor and bounty. There is some conflict in the authorities, but the weight of authority fully sustains the view that the widow in this case did not take a conditional fee, but at best a mere life estate. These authorities are sufficiently referred to in the briefs of counsel; most of them are collated in the note to *Fidelity Trust Co.* v. *Bobloski* (Pa.), 28 L. R. A. (N. S.) 1099.

In so holding, we are not unmindful of our statute, but this view is in full accord with previous expressions of our own court, and the disposition of our own cases to look to the entire will and give effect, if possible, to every clause therein. See *Selig* v. *Trost et al.,* 70 So. 699. In the early case of *Pringle* v. *Dunkley,* 14 Smedes & M. 16, 53 Am. Dec. 110, our court, by Chief Justice SHARKEY, interpreted the words "so long as the said Elizabeth shall continue my widow," and reached the conclusion that:

"This is strictly a limitation, a gift to the wife during her widowhood, and such limitations have been uniformly sustained as valid."

It is stated in the note to *Maddox* v. *Yoe* (Md.), Ann. Cas. 1915B, 1238, that:

"According to the weight of authority a devise to a person so long as he or she remains unmarried, with the limitation over in the case of marriage, gives, in the absence of language clearly indicating a contrary intent, a determinable life estate"—citing abundant authorities.

There are many adjudicated cases holding that the expressions "so long as she remains my widow" "while she remains my widow," and "during widowhood," manifest an intention to create a life estate subject to be defeated by remarriage when the will so provides. The first impression, then, which we get, and which we think any layman would get from reading the will as a whole, to the effect that the widow's estate in this instance is a life estate, is fully in accord with the authorities, and we accordingly hold with confidence that Mrs. Neilson took under the will an estate which would not pass by inheritance to her heirs.

Our interpretation of this will is strengthened by the last clause of the codicil where the testator says, "I also give to my wife,. Julia A. Neilson, in addition to the provisions made in' my will," certain live stock specifically mentioned. This indicates that the testator regarded "the provisions" in the will as not carrying the entire fee, but a qualified interest.

It is argued, however, and that with some degree. of persuasion, that the devise of the remainder was by the express provisions of the will made to depend upon a contingency that never happened, to wit, the remarriage of the widow; that, the contingency not having arisen, the remainder in fee was not effectually devolved by the will but as to it the testator died intestate. If we should be governed by the literal terms of the

will, this view might obtain; but looking again to the whole will, the relation of the parties one to another, the purposes to be accomplished, and, as it were, the setting of this important and solemn act of the testator, we are again convinced that the will devolves title upon appellants, or, at least some of them, and that Mr. Neilson did not intend to, and did not in fact, die intestate as to any portion of this property. Every expression in this will manifests an intention to dispose of all the estate. The testator says himself, "all of my estate both real and personal," and when this language is employed in the introductory clause of a will Mr. Underhill (volume 1, p. 617) says that:

"The presumption arises that, having the disposition of his whole estate in view, he did not intend to die intestate as to any part of it. If his subsequent language may be construed in either of two ways, by one of which a complete disposition will be made of his whole estate, and by the other only a partial disposition will be made, resulting in a partial intestacy, the introductory statement, pointing to a complete disposition, ought to be considered, and that sense adopted which will result in a disposition of the whole estate."

It is true that the language employed in the will does not expressly declare that the devises in favor of appellants were to take effect upon the death of the widow, but there is a clear and unmistakable devise over on the marriage of the widow. This brings the case within a well-recognized class of cases discussed by Mr. Jarman and Mr. Underhill in their splendid works on wills, and simply adds another to the long line of cases construing similar provisions and holding that the devisee in remainder takes the estate. As stated by Underhill (volume 1, p. 625):

"A devise by the testator to his widow for the term of her natural life, but if she should marry again, then in fee to A., without any provision for the disposition of the fee after her death in case she should not marry

again, is a very good form of disposition. In such cases the court will insert the words, 'when she dies' or 'after her death,' and A. will take a vested remainder by implication upon the death of the widow, without having remarried.''

Mr. Jarman, in discussing the rule that where the prior estate takes effect but is determined in a different manner from that expressed by the testator, the ulterior gift fails, proceeds, however, to state:

''An exception to this rule, however, may seem to exist in a case which deserves especial attention, on account of the frequency of its occurrence, namely, where a testator makes a devise to his widow for life, if she shall so long continue a widow, and if she shall marry, then over; in which the established construction is that the devise over is not dependent on the contingency of the widow's marrying again, but takes effect, at all events, on the determination of her estate, whether by marriage or death.

''In *Luxford* v. *Cheeke,* 3 Levinz, 125 (c), which is a leading authority for this doctrine, the testator devised to his wife for life, if she should not marry again, but if she did, then that his son H. should presently after his mother's marriage enjoy the premises, to him and the heirs of his body, with remainders over. The widow died without marrying again; but it was held, that the remainder took effect.

''*Gordon* v. *Adolphus,* 3 Brown's P. C. Toml. 306, was a case of the same kind. The bequest was to the testator's wife 'during her natural life, that is to say, so long as she shall continue unmarried; but in case she shall choose to marry, then and in that case' it was to be for the immediate use of the testator's daughter, and in case she should die without leaving issue, then over; and it was considered by Lord Camden, and afterwards in the House of Lords, that the bequest over was not contingent on the event of the marriage of the wife.

"In these cases, therefore, the widow takes an estate durante viduitate, and the gifts over are vested remainders absolutely expectant on that estate, being to take effect, at all events on its determination, and not conditional limitations dependent on the contingent determination of a prior estate for life."

He further states the general conclusion as follows:

"On the whole, then, the distinction would seem to be that, where the circumstance of not marrying again is interwoven into the original gift, the testator, having thus, in the first instance, created an estate durante viduitate, must generally be considered, when he subsequently refers to the marriage, to describe the determination by any means of that estate, and, consequently, the gift over is a vested remainder expectant thereon."

This doctrine is discussed in a convincing fashion by BURKE, J., in the recent case of *Maddox* v. *Yoe, supra,* and the authorities there quoted demonstrate the soundness of this view. This rule is not the product of to-day, or even of American jurisprudence. It is the rule in England as well as America, and the principle applied was long ago carefully thought out and enforced by distinguished jurists in England and properly followed by our American courts. The enforcement of this rule simply gives expression to the evident intent of the testator. Our court had occasion to discuss devises by implication in *Ball* v. *Phelan,* 94 Miss. 293, 49 So. 956, 23 L. R. A. (N. S.) 895, and the opinion of Judge WHITFIELD in that case reviews many cases where a devise by implication has been declared. It seems that this situation has arisen more frequently in reference to wills in which a husband makes a provision for his wife during widowhood with devises over in the event she remarries. The remarriage is the first contingency provided for and the one especially in the mind of the draftsman of the will. This contingency must necessarily arise before the death of the widow, and so it is that the mind of the testator or draftsman is directed to

that event which must of necessity come first in point of time. Each will, of course, must be construed according to its own peculiar wording, and a slight difference in the penning might indicate a different intention on the part of the testator. Taking the whole language employed in the instant case, we have no doubt about the intention of the testator here to regard appellants as the ultimate objects of his bounty. The testator in this case is so certain that the devise in remainder will some day be theirs that he even undertakes to make disposition of that portion of the estate devised to John W. Johnson in the event this minor should die before he reached the age of maturity. The language of the codicil is especially positive and far-reaching.

There is no occasion for us now to decide just who are the beneficaries of this remainder. No issue of this kind is here properly made or presented. In our judgment appellees did not inherit this land from Mrs. Neilson, and under this view the demurrer to the bill should have been sustained. It follows that the decree of the chancellor must be reversed, the demurrer sustained, and the bill dismissed, without prejudice to the right of appellees to request that the case be remanded for the purpose of having the bill amended, if they so desire.

Reversed, and decree here for appellants.

*Reversed.*