---

(No. 13217.—Affirmed in part and reversed and remanded in part.)
O. J. KERN *et al.* Appellants, *vs.* VERN H. KERN *et al.* Appellees.

*Opinion filed April 21, 1920—Rehearing denied June 3, 1920.*

1. WILLS—*a will and its codicils should be construed together.* The several clauses of a will and its codicils should be construed so as to give effect to every provision according to the general intent and purpose of the testator as gathered from the entire instrument, considering the will and the codicils as one document.

2. SAME—*plain provisions of will cannot be changed by doubtful expressions of codicil.* The plain provisions of a will cannot be taken away or modified by doubtful expressions contained in a codicil.

3. SAME—*punctuation will not be permitted to control meaning of will.* The punctuation or capitalization in a will will not be permitted to control its meaning as ascertained from a consideration of the whole will.

4. SAME—*when word "also" means "in like manner."* Where a provision in a will giving to the testator's wife certain real and personal property is followed by the words, "also thirty acres off the north side of the NE ¼ of Sec. 21, * * * to have and to hold during her widowhood," the word "also" will be construed to mean "in like manner," and the limitation during widowhood will be construed to apply to the preceding devise, although it is impossible to tell from the original will whether the word "also" begins a new sentence.

5. SAME—*a devise to a wife during her widowhood is a devise of a life estate.* Where a will gives an estate to the testator's wife while she remains his widow the estate to her is for life, only, and will terminate either by marriage or the death of the widow.

6. SAME—*a devise over after gift to testator's wife during her widowhood is a vested remainder.* A devise to the testator's wife, "to have and to hold during her widowhood and in case of her re-marriage" to be divided equally among the testator's children, (naming them,) is a devise of a life estate to the wife with a vested remainder in the children. (*Thompson* v. *Adams*, 205 Ill. 552, distinguished.)

7. SAME—*renunciation of life estate by widow accelerates rights of remainder-men.* Where a widow who has been given a life estate renounces the will and elects to take her dower and the statutory allowance instead, such renunciation works an extinguishment of the life estate and accelerates the rights of the remainder-men.

APPEAL from the Circuit Court of Moultrie county; the Hon. GEORGE A. SENTEL, Judge, presiding.

EMERY ANDREWS, and R. G. REAL, for appellants.

EDWARD C. CRAIG, DONALD B. CRAIG, JAMES W. CRAIG, JR., FRED H. KELLY, and JAMES C. VANMETER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill filed in the circuit court of Moultrie county for the partition of certain lands in that county owned at the time of his death by John A. Kern. The case involves

the construction of Kern's will and three codicils thereto, as affected by the renunciation filed by the testator's widow. The circuit court entered a decree construing the will and finding the interests of the various owners and ordered a partition. From that decree certain of the testator's children prayed an appeal to this court.

John A. Kern died in 1918, leaving his widow, Laura B. Kern, him surviving, and seven children as his heirs-at-law. Vern, Edith and Helen Kern were his children by his widow, Laura, and O. J., John W. and Minnie M. Kern and Eunice Kern Brown were his children by a former wife. Kern at the time of his death owned a home in the village of Gays, Illinois, consisting of about six acres. He also owned the northeast quarter of a certain section 21 in said county, containing about 160 acres, and an undivided interest in the west half of the southeast quarter of a certain section 27 in said county. The balance of the west half of the southeast quarter was owned by his widow and children, and his interest in that 80-acre tract was an undivided interest, and bore such proportion to the 80-acre tract that it is referred to in the briefs and seems to have been considered by counsel for all parties as if he owned outright of the 80-acre tract 21.63 acres. The portions of the will and codicils pertinent to the questions here being considered are as follows, the punctuation and capitalization following that given in the abstract:

The original will, after providing for the payment of debts and funeral expenses, reads:

"Second:—After paying such funeral expenses and debts, I give and bequeath to my beloved wife, Laura B. Kern, six acres in the Village of Gays, in Sec. 26, being my home place in said Village, together with all household goods, buggies, carriages, horses or other personal property being on said premises at the time of my decease, also thirty acres off the north side of the NE¼ of Sec. 21, Town 12 N., R. 6 East, to have and to hold during her widowhood and

in case of her remarriage then it is to be divided equally between my children, Vern, Edith and Helen Kern. My wife is to draw the rents and profits on my land until the year 1916. All moneys I may have at my decease I give and bequeath to my wife, Laura B. Kern. The balance of my land in Sec. 21, T. 12 N., R. 6 and 24 acres of the W½ of the S. E. quarter of Sec. 27, T. 12 N., R. 6, I desire to be equally divided into five equal parts between my children as follows: O. J. Kern 1 pt., M. M. Kern 1 pt., J. W. Kern 1 pt., Mrs. E. K. Brown 1 pt., and Vern Kern, Edith Kern and Helen Kern, together one part. It is my wish that Mrs. E. K. Brown have her share of said premises where the house stands and to make it equal share, commencing at the SE corner of said premises thence north to the north side of bridge in public highway, thence west a sufficient number of rods to make her equal part."

It is not necessary to quote the balance of the will here.

The first codicil reads as follows: "I wish to change one item in my will proper. Where I located 28 acres to Vern Kern, Edith Kern, Helen Kern, I will now make the amount 21 acres. On account that the other land is not so valuable. There is still left of the land about one hundred and seven acres that is to be divided between O. J. Kern, J. W. Kern, M. M. Kern."

The second codicil reads as follows: "I, J. A. Kern, being of sound mind, do hereby recall the appointment of J. A. Hortenstine as executor of my will, and appoint Vern H. Kern as sole executor of said will. To Vern Kern, Edith Kern and Helen Kern, I give 21 'twenty-one' acres in Sec. 21. 'Sec. twenty-one.' The balance of the farm is to be divided O. J. Kern, J. W. Kern and Minnie Kern."

The third codicil does not affect the questions under consideration.

Three principal questions are argued in the briefs and exhaustive and able arguments have been filed by counsel for all parties. The first question considered by counsel is

293 — 16

the amount of land that was inherited under the will by Vern, Edith and Helen Kern, other than the 30 acres in which their mother had a life interest. It seems to be agreed that at the time of his death the testator owned about 188 acres of land, 160 of which composed the northeast quarter of section 21, approximately 21.63 acres of an undivided 80 acres were in the west half of the southeast quarter of section 27, and six acres in his home place in Gays.. After devising the property in Gays and 30 acres off the north side of the 160-acre tract, he provided in clause 2 as follows: "The balance of my land in Sec. 21, T. 12 N., R. 6 and 24 acres of the W½ of the S. E. quarter of Sec. 27, T. 12 N., R. 6, I desire to be equally divided into five equal parts between my children as follows: O. J. Kern 1 pt., M. M. Kern 1 pt., J. W. Kern 1 pt., Mrs. E. K. Brown 1 pt., and Vern Kern, Edith Kern and Helen Kern, together one part." It is manifest from the will that the testator assumed that he owned what was equivalent to 24 acres of the west half of the southeast quarter of section 27, when, in fact, he only owned approximately 21.63 acres. Under this clause of the will, considered by itself, fairly construed, Vern Kern and his two sisters, Edith and Helen, were devised one-fifth of the balance of the testator's lands,—that is, one-fifth of 130 acres in the northeast quarter of section 22 and 21.63 acres in section 27, or one-fifth of a total of 151.63 acres,—that is, 30 acres and a fraction to the three, or 10 and a fraction acres to each. Subsequently, in February, 1913, the testator added the first codicil of the will, by which he seemed to assume that he had formerly given 28 acres to Vern, Edith and Helen, and provided that he now desired to make that amount 21 acres instead of 28 acres, "on account that the other land is not so valuable." By the second codicil he reiterated his intention to give the three children of his second wife 21 acres in section 21. By virtue of these codicils and the will the trial court held that Vern, Edith and Helen Kern were each de-

vised not only 21 acres in section 21, but were also devised one-third of one-fifth interest in the 21.63-acre tract in the west half of the southeast quarter of section 27.

It is earnestly argued by counsel for appellees that this finding was correct; that the testator did not intend by the two codicils to change his original will as to the interest left to the children of his second wife in section 27, but that he intended only to change the amount that he left them in section 21. Counsel for appellants argue, on the other hand, that, construing the will and codicils together, it must be held that the testator intended by his codicils to leave the same proportionate value of the balance of his lands to the children of his second wife as he intended to in the will itself, but that he intended to change the location of such property from one-third of the lands in both sections so that all their interest would come from section 21 and none from section 27,—that is, that by these codicils he attempted to limit the devise to the three children of his second wife to 21 acres, or seven acres each, to be all allotted from the northeast quarter of section 21,—and that the court erred in finding that in addition to the seven-acre portions they were also each entitled to one-third of a one-fifth interest in the 21.63-acre tract in section 27.

The construction of the will and codicils on this point is not free from doubt. It is clear that the testator himself made mistakes as to the amount of land that he owned and which he was attempting to devise. It also seems evident that he intended to divide the balance of his land,—after devising to the widow a life interest in the 30-acre tract and the six-acre tract in the first part of the will, with remainder in those two tracts to Vern, Edith and Helen Kern,—into five substantially equal parts, one of these parts to be given to each of the four children of his first wife and the other one-fifth part to be divided equally among the three children of his second wife. The codicils do not supersede the will but are to be construed with it as if they

were all one instrument. (*Pratt* v. *Skiff,* 289 Ill. 268.) In construing wills with codicils, the will with the codicils must, if possible, stand together, and the latter should be construed in harmony with the former unless there is a clear revocation by the codicil of the provisions of the will. The plain provisions of the will cannot be taken away or modified by doubtful expressions contained in the codicil. (*Alford* v. *Bennett,* 279 Ill. 375.) It is fundamental that in construing wills the constant endeavor of the court must be to give effect to the true intention and meaning of the testator as expressed by the language used in the will. This is the first and great rule in the exposition of wills. (*Black* v. *Jones,* 264 Ill. 548; *Wardner* v. *Baptist Memorial Board,* 232 id. 606.) This same rule, under the authorities cited, applies to construing a will and codicils. They should be construed so as to give effect to every word and every part thereof, and the several clauses of both should be made to harmonize so as to give effect to every provision, provided such construction is not inconsistent with the general intent and purpose of the testator as gathered from the entire document, considering the will and codicil as one document. *Alford* v. *Bennett, supra,* and cases cited.

Opposing counsel argue strenuously to support their respective views by attempting to show what the testator really meant by the will and codicils as to the amount of land that was intended to be left to Vern, Edith and Helen Kern. All counsel concede that the testator did not state accurately in this respect the amount of land he owned and attempted to devise, and they both attempt to show what figures he really intended to use and by such argument claim support for their respective positions. We do not think there is any great force in either of these contentions in attempting to show by the figures they respectively assert the testator intended to use just what his intention was with reference to this devise to Vern, Edith and Helen Kern. In none of these attempts do the figures correspond accurately

with what the testator actually owned at the time he executed his will. In our judgment more satisfactory results can be obtained by ascertaining from the entire will and codicils themselves, so far as practicable, the general intent of the testator in regard to the disposition of his property. It seems to us that by the will itself the testator intended to divide into five equal parts the balance of his lands after he had given a life interest in the 30 acres and in the six acres to his wife with remainder to her children in the first part of the will, and that he did not intend his three children by his second wife to have more than one-fifth of this entire balance. By the first codicil it seems clear that he intended to change the devise of land to these three children because he thought the five equal parts by acreage, as provided by the original will, did not give an equality in value between the parts on account of the different values of the land attempted to be devised. By the second codicil he attempted to make clear what he feared might not be clear from the first codicil,—that the 21 acres of land that he wished to devise to his three children by his second wife were located in section 21 and not any part in section 27. To construe the will as found by the decree and contended for by counsel for appellees on this point would defeat what seems to us the intention of the testator,—that is, to divide the remainder of the land, after taking out the 30 acres and the six acres, into five equal parts,—and to follow their contention would result in giving to his three children by his second wife more than one-fifth of the land so divided, in value. In our judgment the most reasonable construction of the will and codicils on this question is that he intended to divide the remainder of his lands, after disposing of the 30 acres and the six acres, into five approximately equal parts, one of these parts to go to his three children by his second wife, Vern, Edith and Helen Kern, and that he intended by the codicils to change his will so that their one-fifth part should be taken

alone from section 21 and not any part from section 27. The decree of the court was therefore incorrect in construing the will so that these three children should have 21 acres from section 21, and in addition to that should have a one-fifth part of the 21.63-acre interest that testator owned in section 27.

Counsel in their briefs next discuss the proper construction of the first part of the will, which reads as follows: "After paying such funeral expenses and debts, I give and bequeath to my beloved wife, Laura B. Kern, six acres in the Village of Gays, Illinois, in Sec. 26, being my home place in said Village, together with all household goods, buggies, carriages, horses or other personal property being on said premises at the time of my decease, also thirty acres off the north side of the NE¼ of Sec. 21, Town 12 N., R. 6 East, to have and to hold during her widowhood and in case of her remarriage then it is to be divided equally between my children, Vern, Edith and Helen Kern." The punctuation after the word "decease," at the end of the first sentence above quoted, is not clear in the original will, which has been certified to this court for inspection. Counsel for appellants contend that it should be considered a period and that the first letter of the next sentence should be held to be a capital. It is impossible to tell from the original will, or from any other evidence in the record, whether the testator intended this punctuation to be a period or a comma, and it is also somewhat difficult to tell whether or not he intended to have the next word, "also," begin with a capital. There was no logical system followed by the draftsman of the will as to punctuation or the use of capitals, and therefore no forceful argument can be drawn from the method of punctuating or capitalizing. The whole object in the construction of wills is to arrive at the intention of the testator, and for this purpose every part of the will should be considered in relation to every other part. The punctuation or capitalization will not ordinarily be permit-

ted to control its meaning. (*Kuehle* v. *Zimmer,* 249 Ill. 544; *Johnson* v. *First Nat. Bank,* 192 id. 541.) The trial court in its decree construed these two sentences as if the punctuation after "decease" were a comma and the first letter of the next word were a small "a," and held that therefore the words, "to have and to hold during her widowhood," etc., limited the devise of the six acres in Gays as well as the devise of the 30 acres.

Counsel for appellees argue that under the authorities, whether this punctuation be considered a period or not, the two sentences must be construed together and the same result reached as to their proper meaning as would be reached if the punctuation were considered a comma. Counsel for the appellants urge that the punctuation being considered a period, the first sentence would be held complete in itself and would convey to the wife the six acres in fee simple and the personal property absolutely, and that as the widow, Laura B. Kern, has renounced under the will, this six-acre tract became intestate property, there being no residuary clause, and would be inherited by the seven children of the deceased, and that the decree of the circuit court in holding that Vern, Edith and Helen Kern were entitled to one-third, each, in all this property, not only in the 30 acres but in the six acres, subject to the dower and homestead rights of the widow, is clearly erroneous. Numerous authorities are cited by counsel bearing on this question, but only those which we consider most important will be referred to.

Counsel for appellees argue that the word "also," beginning next after the word "decease," means, clearly, "in like manner." This argument is supported by the reasoning of this court in *Morrison* v. *Schorr,* 197 Ill. 554, *Kratz* v. *Kratz,* 189 id. 276, and *Green* v. *Hewitt,* 97 id. 113.

*Platt* v. *Braunnan,* 34 Colo. 125, is very similar in regard to the wording of the will, and we consider it so much in point that we shall quote from it at some length. The provision of the will there under consideration as written

and punctuated was as follows: "I give and devise to my husband, Samuel Platt, all of my right and interest of, in and to that certain lot or parcel of land, known and described as lot numbered eighteen (18) in block numbered one (1) in Titus Addition to the City of Denver, in Arapahoe County, Colo., in which property I own an undivided one-half as tenant in common with my said husband. Also all of my right and interest of, in and to lots [here describing the lots] to have and to hold the said interests in the said described parcels of land to the said Samuel Platt, together with the rents, incomes and profits thereof, and the sole use and benefit thereof, during the term of his natural life. And upon his death to my six children, the heirs of my body by former marriages," naming them. The court there said: "Defendant says that item 3 consists of three separate and distinct sentences and three separate and independent devises, between which there is no grammatical or other connection or common purpose but each is complete in itself. To sustain this contention she says that the fact that in the ninth line a period follows 'husband' is proof that the sentence thus ending is complete. She says this is strengthened by the fact that 'Also,' immediately following, begins with a capital letter, and is here used in the sense of 'in addition to' or 'besides,' and introduces a new subject and precedes independent devises. We cannot agree with this construction. Unquestionably, if what we call the first part of the first sentence, ending with 'husband,' stood alone the fee would pass, for the language employed would be sufficient to transfer it, and, if any accurate or systematic method of punctuation had been employed, color would be lent to defendant's argument based upon the position of this period. But not only here but in other items of the will recognized rules of punctuation are disregarded by the scrivener, and many common words unquestionably in the middle of a sentence begin with capital letters." Then follows a discussion as to the meaning of "also," the court reach-

ing the conclusion that the word "also," in the connection used, should be construed as meaning "in like manner," the same as contended for by appellees herein.

*Hauser* v. *Craft*, 134 N. C. 319, and *Connecticut Trust and Safe Deposit Co.* v. *Chase*, 75 Conn. 683, are very like the case here under consideration. We shall not quote from them at length, but deem it sufficient to refer to them and say that the reasoning. in those cases strongly supports the finding of the decree on this point in this case, as does also the reasoning in *Morgan's Exrs.* v. *Morgan's Trustees*, 41 N. J. Eq. 235.

We do not think the theory of counsel for appellants that the testator must have intended in the first sentence to give a fee simple title in the six acres to his wife because in the same sentence he gave her (they argue) the personal property absolutely, is the right one on the question of the meaning to be given to these two sentences in this part of the will, for "it is now well established that a testator may bequeath a life estate in personal property to another and limit a remainder on it.—*Hetfield* v. *Fowler*, 60 Ill. 45; *Welsch* v. *Belleville Savings Bank*, 94 id. 191." (*Pratt* v. *Skiff*, *supra*, p. 274.) Having in mind all the authorities cited, we conclude, both by the weight of authority and on reason, that the decree rightly construed this portion of the will, holding that the two sentences should be construed together, and that the testator's wife only took a life interest in the six acres and the personal property there specified, as well as in the 30 acres, with the remainder to the three children of the second marriage.

The third question raised and discussed by counsel is as to the character of the estate given in the will to the widow in the 30 acres and the six acres in Gays, and whether the remainder to her three children, Vern, Edith and Helen, was vested or contingent. It is argued by counsel for appellees, and so found by the decree, that the widow, by the wording "to have and to hold during her widowhood," took

a life interest in said real estate and that her three children took a vested remainder therein, which by the acceleration effected by the widow's renunciation became at once vested in present possession in them. Counsel for appellants argue that under the proper construction of this portion of the will the remainder to the three children was contingent and therefore was destroyed by the renunciation of the preceding estate granted to the widow, and that thereupon the remainder which was to go to the three children of the widow under the will would become intestate property by the destruction of the remainder and would descend to all the seven children of the testator.

The question as to whether the remainder, under such conditions as are provided for in this will, is vested or contingent has been frequently considered and discussed. In Jarman on Wills (vol. 1, 6th Am. ed. p. 775,) the author says: "An exception to this rule, however, may seem to exist in a case which deserves especial attention on account of the frequency of its occurrence, namely, where a testator makes a devise to his widow for life if she shall so long continue a widow, and if she shall marry, then over, in which the established construction is that the devise over is not dependent on the contingency of the widow's marrying again, but takes effect, at all events, on the determination of her estate, whether by marriage or death." The author then goes on to quote two English authorities, and continues (p. 776) : "In these cases, therefore, the widow takes an estate *durante viduitate,* and the gifts over are vested remainders absolutely expectant on that estate, being to take effect, at all events, on its determination, and not conditional limitations dependent on the contingent determination of a prior estate for life."

This court has held that where the will provides that the estate shall be left to the widow while she remains the testator's widow, the estate to her is for life, only, which will terminate either by marriage or death of the widow.

In *Kratz* v. *Kratz, supra,* the court said (p. 280) : "The first question is, what effect is to be given to the words in the second clause of the will, 'during her widowhood?' We have held that they mean during life unless sooner terminated by marriage,—that is, a devise or bequest to a wife during her widowhood, or so long as she remains the widow of testator, is a gift for life, only, which may be terminated by a second marriage of the widow,"—citing in support of the holding three other decisions of this court. The great weight of authority in other jurisdictions supports this construction as to wills giving property to the widow while she remains unmarried. In *Trenton Trust and Safe Deposit Co.* v. *Armstrong,* 70 N. J. Eq. 572, the will provided that the property should be devised to the testator's three daughters "so long as they remain unmarried" and then over. The opinion found that the testator intended to create, "and under well established rules for the construction of wills did create, an estate for life, which was subject to an earlier termination upon the marriage of all his then unmarried daughters, and that the remainder over takes effect on the determination of the preceding estate, whether by death or marriage." In *Metcalf* v. *Framingham Parish,* 128 Mass. 370, the court said (p. 375) : "It is well settled in England that a devise or bequest to a widow for life if she shall not marry, and if she shall marry then over to another person, gives the remainder to him if she dies unmarried. [Here citing several English authorities.] In such cases a general intent is implied to give the remainder over after the death of the tenant for life, and the event of her marrying again is treated as merely qualifying or cutting down her life estate and not as prescribing the contingency upon which the remainder is to take effect." To the same effect are *Bates* v. *Webb,* 8 Mass. 458, *Haab* v. *Schneeberger,* 147 Mich. 583, and *Hale* v. *Neilson,* 112 Miss. 291.

The opinion in *Maddox* v. *Yoe,* 121 Md. 288, contains an exhaustive discussion of this question. Among other

things it is stated (p. 294) : "The next question is, Does the remainder after her death and the death of Mary F. Maddox pass to Turner Ashby Maddox under the limitation over contained in the will? This question, upon settled rules of construction, is free from difficulty. The courts have been called upon frequently to construe similar provisions in wills, and they have uniformly held that under limitations over, such as that now under consideration, the devisee in remainder will take the estate." The opinion then quotes with approval several authorities holding to the same effect, among others, 1 Underhill on Wills, (1900 ed.) sec. 472, which states: "A devise by the testator to his widow for the term of her natural life, but if she should marry again then to A in fee, without any provision for the disposition of the fee after her death in case she should not marry again, is a very common form of disposition. In such cases the courts will insert the words 'when she dies' or 'after her death,' and A will take a vested remainder by implication upon the death of the widow without having re-married." See, also, to the same effect, *Greenwood* v. *Greenwood,* 167 Pac. (Colo.) 1179, and *Dubois* v. *Van-Valen,* 61 N. J. Eq. 331.

In Gray's Rule Against Perpetuities (2d ed.) the distinguished author states in note 2 to section 102 that "estates are construed as vested, not only by holding a condition subsequent rather than precedent, but often also by holding that there is no condition at all. Thus, a devise to a widow for life if she did not marry again, but if she did then to A, was held to give an estate to the widow till she married or died and a vested remainder to A." This doctrine of Gray's is quoted with approval in Kales on Future Interests, (1905 ed.) sec. 111.

Counsel for appellants concede that all these authorities so hold, but argue that from the full reasoning of Jarman on Wills and Underhill on Wills those authors conclude that under the wording of a will such as here under considera-

tion the estates must be held to be contingent and not vested. We do not so read those authorities. That portion of Jarman on Wills (vol. 1, 6th Am. ed. p. 777,) relied upon by counsel for appellants reads, in part, as follows: "The distinction would seem to be, that where the circumstance of not marrying again is interwoven into the original gift, the testator, having thus in the first instance created an estate *durante viduitate,* must generally be considered, when he subsequently refers to the marriage, to describe the determination, by any means, of that estate, and, consequently, the gift over is a vested remainder expectant thereon. On the other hand, where a testator first gives an absolute estate for life and then engrafts thereon a devise over to take effect on the marriage of such devisee for life, the conclusion is that the devise over is not to take effect unless the contingency happens." The author then continues on page 777: "The construction in the former class of cases being that the limitations over take effect, at all events, on the determination of the widow's estate, whether by marriage or death, it is not displaced by the circumstance that some of those limitations (*e. g.,* a provision for the widow during the remainder of her life, expressly in case she marries,) can only take effect in the event of her marrying, although if she should not marry the other limitations will still take effect as vested remainders expectant upon her death." That part of Underhill on Wills (vol. 2, 1900 ed.) relied on by counsel for appellants is found in section 858, and reads as follows: "The question is an old one and frequently arises. The difficulty is caused by the fact that an estate which is given for life in express terms is to be terminated by a contingent event,—*i. e.,* the marriage of the life tenant. Under such circumstances it may seem the devise over is contingent and should take effect only if the prior life estate is terminated by marriage, and that it should be defeated if it is not. Thus, where land was devised to the widow of the testator 'for life, but upon the express condition that

if she should marry' again the land should go to A in fee, the estate to the widow was held to be an estate upon condition and the estate to A was a conditional limitation, which was dependent upon the contingency of re-marriage by the widow, and where the widow did not re-marry the devise over did not take effect." But the author then continues in the same section: "But the majority of the decisions have not thus construed such a limitation. * * * The distinction between the two cases is difficult to apprehend so far as mere words are concerned. The solution is to seek the intention from the whole will. * * * But where it appears to be the primary intention of the testator to give the widow an estate in limitation for widowhood, which may, of course, endure for the life of the widow, the devise over is a vested remainder coming after the life estate of the first taker." In our judgment, a reading of all that these two authors state on this somewhat difficult subject leads necessarily to the conclusion that they believe that a will worded as is this one should be construed as giving a vested remainder to the three children of the widow and a life interest to the widow. This is in accord with the great weight of authorities in all jurisdictions and with the reasoning of this court in its opinions whenever this question has been touched upon.

Counsel for appellants rely strongly on the reasoning of this court in *Thompson* v. *Adams,* 205 Ill. 552, as upholding their view of the proper construction. A reading of the will construed in that case shows that the wording of the two wills is entirely different, and the holding that the remainder there was contingent has no real bearing on the question whether this was a contingent or vested remainder, as it is plain in that will that the devise under consideration was to a class of persons and could not be determined until the death of the widow or her marriage, and therefore necessarily the remainder was contingent. A different situation is here presented. This court has frequently said

that the reasoning of the court in construing one will can not have a controlling effect in the construction of another will because the wording of the two wills is usually so different; that cases on wills may serve as a guide with respect to the general rules of construction but can have little or no weight in assisting in finding the intention of the testator, such intention being the polar star in reaching the proper construction of wills. *O'Hare* v. *Johnston,* 273 Ill. 458, and cases there cited.

The remainder in the three children of the widow being vested, the widow's renunciation worked an extinguishment of her life estate and accelerated the rights of the remainder-men. It has long been settled in this court that where a widow who has been given a life estate under a will renounces and elects to take her dower or the statutory allowance instead, such renunciation works an extinguishment of her life estate and accelerates the rights of the remainder-men. *Slocum* v. *Hagaman,* 176 Ill. 533; *Wakefield* v. *Wakefield,* 256 id. 296, and cases cited; *Northern Trust Co.* v. *Wheaton,* 249 id. 606; *Sherman* v. *Flack,* 283 id. 457.

Some other points are discussed in the briefs, which, in view of the conclusions we have reached on the three principal questions involved, it is unnecessary for us to consider or decide.

The decree of the circuit court will be affirmed as to the second and third questions discussed herein and reversed and remanded as to the first point herein considered, and for further proceedings in harmony with the views herein stated.      *Affirmed in part, reversed and remanded in part.*