MARY HOLTON *et al.*

*v.*

FRED J. DUNKER *et al.*

*Opinion filed October 25, 1902.*

1. EVIDENCE—*when witnesses are incompetent to testify to forgery of deeds.* Under section 2 of the Evidence act, where the grantors in quit-claim deeds are seeking to have them set aside on the ground of forgery, if the party alleged to have forged the deeds is insane the grantors are incompetent to testify as to such forgery.

2. SAME—*grantor's admissions after sale cannot be received to defeat title.* The admissions or declarations of a grantor after he has parted with all his interest in the land will not be received in evidence to defeat the title of his innocent grantee.

3. SAME—*proof of forgery must be clear to defeat title of an innocent grantee.* Proof of alleged forgery of quit-claim deeds must be clear and satisfactory in order to warrant their cancellation and the resultant defeat of the title of an innocent purchaser from the grantee in such deeds.

APPEAL from the Circuit Court of McHenry county; the Hon. CHARLES E. FULLER, Judge, presiding.

This is a suit in chancery commenced in the circuit court of McHenry county to set aside as a cloud upon their title to certain real estate located in said county, two quit-claim deeds purporting to be made by the appellants to William Ryan, a deed from William Ryan to Fred J. Dunker, and a trust deed from Fred J. Dunker to J. S. Rogers, given to secure the payment of two promissory notes aggregating the sum of $3900, signed by Fred J. Dunker. The cause was referred to the master, who filed a report adverse to the claim of the appellants, and the court, after overruling exceptions thereto, entered a decree dismissing the original bill of appellant Mary Holton and the cross-bill of appellant Mary Ryan for want of equity, and they have brought the record to this court, by appeal, for further review.

It appears from the pleadings, evidence and master's report that William Ryan, Sr., departed this life testate

on the 7th day of December, 1878, leaving him surviv-
ing the appellant Mary Ryan, as his widow, and the ap-
pellant Mary Holton, the appellee William Ryan, and
Thomas Ryan and John Ryan, his sons and daughter and
sole heirs-at-law; that by the terms of the will of Wil-
liam Ryan, Sr., his wife was given a life estate in his
property, both real and personal, the remainder being
devised in fee to his four children in equal parts; that
John Ryan died intestate on the 19th day of July, 1892,
unmarried, leaving him surviving as his sole heirs-at-law
his mother and brothers and sister; that the principal
part of the estate of William Ryan, Sr., consisted of
the farm in controversy, which contained one hundred
and forty acres; that shortly after the death of William
Ryan, Sr., the appellants and the appellee William Ryan
moved to Chicago, where the appellee William Ryan
seems to have been engaged in the practice of law; that
the farm was occupied by the tenants of appellant Mary
Ryan until the spring of 1898, when it was sold to the
appellee Fred J. Dunker for the sum of $4900. At the
time the sale to Fred J. Dunker was consummated, the
appellee William Ryan went to the town of Marengo,
near where the farm was located, and had with him a
quit-claim deed from his mother, Mary Ryan, and a quit-
claim deed from his sister, Mary Holton, and her husband,
conveying to him all their interest in the farm. He met
his brother, Thomas Ryan, at Marengo, who also quit-
claimed to him all his interest in the farm. A meeting
was had at the law office of Edward D. Shurtleff, who rep-
resented Fred J. Dunker, to close the sale. J. S. Rogers,
who had represented Mrs. Ryan in renting the farm for
many years, William Ryan, Fred J. Dunker, Thomas Ryan,
Edward D. Shurtleff, and perhaps others, were present.
The quit-claim deeds from the appellants were exhibited
by William Ryan and examined by Shurtleff and Rog-
ers, and a warranty deed from William Ryan to Fred J.
Dunker, which he had with him and which had been pre-

pared in Chicago, was then delivered to Fred J. Dunker, who then paid upon the purchase price $1000 in cash, which was divided between Thomas and William Ryan, Thomas receiving $300 and William $700. The balance of the purchase price was evidenced by two promissory notes, one for $1500, due September 1, 1898, and one for $2400, due March 1, 1899, payable to the order of J. S. Rogers, bearing six per cent interest, signed by Fred J. Dunker and secured by a trust deed upon the farm to J. S. Rogers, trustee. The deeds were all recorded within a few days and Dunker immediately went into possession of the land. The notes and trust deed were left by William Ryan with Rogers to negotiate. Within thirty days Rogers concluded to take the notes as an investment for Sarah Dalby, whom he represented, and on March 26, 1898, he sent a draft for the amount of the notes, less two per cent discount and $2.40 printing bill, $3 livery hire, $50 taxes and $25 for his services in closing up the sale, to William Ryan, at Chicago, and received from him the following receipt:

"CHICAGO, ILLINOIS, March 26, 1898.

"Received of J. S. Rogers, of Marengo, Illinois, a receipt from Thomas C. Ryan for $950 and a receipt from the same person for $250, given in consideration of a settlement of the estate of William Ryan, deceased. Also a draft for $2840.14, to be distributed among the remaining heirs of said estate, and a receipt for taxes for the year 1897 on the back of the same.

WILLIAM RYAN."

Fred J. Dunker paid the $1500 note at about the time it fell due. Mary Ryan was at Marengo in the summer following the sale, and in a conversation with Fred J. Dunker asked him if he lived on the farm, and said to him, "It is a fine farm you have bought, and I hope you will enjoy it many a day." This conversation was not denied by Mrs. Ryan. Afterwards she, with her son William, was in Marengo to see about the erection of a monument upon the family burial lot, and William on that occasion said to Joseph Basuier, in the presence of his mother, that his mother was not satisfied, after they sold

the farm, until they got a monument, and they were going to have a "sky-scraper." After the sale Mrs. Ryan said nothing to Rogers about renting the farm or the rent therefor, although she saw him in Marengo after the rent was due, and, as she testified, before she knew the farm had been sold. The suit was commenced March 10, 1899. On August 14, 1899, William Ryan was declared insane, and on January 27, 1900, his insanity was suggested, and upon a stipulation of all the parties to the suit Edward D. Shurtleff was appointed his guardian *ad litem* and answered for him as such.

FRANCIS T. MURPHY, (EDWARD C. HIGGINS, of counsel,) for appellants.

EDW. D. SHURTLEFF, and A. B. COON, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

The contention of appellants is that the quit-claim deeds from Mary Ryan and Mary Holton to William Ryan were forged by William Ryan, and that they are null and void. Mary Ryan, Mary Holton and William Holton, the husband of Mary Holton, all testified that they never signed or acknowledged said quit-claim deeds or authorized William Ryan to sign them on their behalf. Charles A. Surine, the notary public before whom they each purport to have been acknowledged, testified that he had no recollection of taking the acknowledgment thereto of Mrs. Ryan or Mrs. Holton and her husband, and N. S. Allee, one of the solicitors for the complainants, testified that William Ryan, some time after the sale of the farm to Fred J. Dunker, admitted to him that the quit-claim deeds from Mary Ryan and Mary Holton and husband to him were forgeries; that he signed the same without the knowledge or consent of his mother or sister, and that he forged the certificate of acknowledgment of Charles A. Surine as notary public and attached his notarial seal to such certificate of acknowledgment. Charles A. Surine

also testified that the certificate of acknowledgment to the deed from William Ryan to Fred J. Dunker, which purported to have been taken before him, was a forgery. The testimony of these witnesses was substantially all the testimony offered on behalf of the appellants.

The controverted question of fact in this case is, did William Ryan forge the quit-claim deeds from his mother and sister, which conveyed to him their interest in the farm? If he did, said deeds are absolutely void and the title of Mrs. Ryan and Mrs. Holton to their interest in the farm never passed out of them, and while the evidence shows beyond all question that Fred J. Dunker, J. S. Rogers and Sarah Dalby acted in the utmost good faith in dealing with William Ryan, said deeds, if forgeries, should be set aside, and with them would fall the deed from Ryan to Dunker, and the trust deed from Dunker to Rogers, so far as it affects the interest of Mrs. Ryan and Mrs. Holton in the farm.

It is contended that Mary Ryan, Mary Holton, and her husband, William Holton, are not competent witnesses, on the ground that, William Ryan being insane and by reason thereof unable to testify in this case, they are disqualified as witnesses. We think such contention correct. It is too clear for argument that under section 2 of chapter 51 of the Revised Statutes, entitled "Evidence and Depositions," the appellants and the husband of Mrs. Holton are disqualified as witnesses. William Ryan, if sane, would be a competent witness to testify upon the subject of whether or not he forged the names of his mother, sister and brother-in-law to the said quit-claim deeds, and as his mouth is closed by reason of his insanity, the law wisely has closed the mouths of all other persons who are parties to or directly interested in the event of the suit, which includes Mary Ryan, Mary Holton and the husband of Mary Holton. The testimony of Mary Ryan, Mary Holton and William Holton is therefore incompetent, and must be excluded.

The admissions of William Ryan claimed to have been made to N. S. Allee are also incompetent, for the reason that they were not made in the presence of the parties sought to be bound thereby, and were made subsequent to the time when William Ryan had parted with all his interest in the farm.   A party who has parted with all his interest in real estate cannot defeat the title of his innocent grantee by making statements or admissions in disparagement of the title thereto after he has parted with all interest in the land.

We are disposed to give but little weight to the testimony of the notary public, Charles A. Surine, to the effect that he had no recollection of taking the acknowledgment of Mary Ryan and Mary Holton and her husband.   He and William Ryan were associated together in business in the city of Chicago.   He stated to Joseph B. Burtt, a disinterested witness, that he took the acknowledgment of the deed from William Ryan to Fred J. Dunker and that the other deeds were all right; that Mrs. Ryan was satisfied with the sale, but that the trouble was with Mrs. Holton.   It clearly appears from a letter written by him to Mrs. Holton, introduced in evidence, that he was endeavoring to delay her in bringing suit against himself and Ryan for her share of the proceeds of the sale of the farm, which he represented would soon be paid her.

In order to overcome the deeds in question the proof should be clear and satisfactory that they were forgeries. From a careful examination of the record no such proof appears therein.   While it is doubtless true that William Ryan misappropriated the share of the proceeds of the farm which belonged to his mother and sister, it does not appear that the quit-claim deeds from Mrs. Ryan and Mrs. Holton to William Ryan were forgeries.

We are of the opinion the case was disposed of correctly by the chancellor.   The decree of the circuit court will therefore be affirmed.        *Decree affirmed.*