(No. 10908.—Reversed and remanded.)

CHARLES N. COCHRAN *et al.* Appellees, *vs.* FREDERICK A. COCHRAN *et al.* Appellants.

*Opinion filed February 21, 1917.*

1. PARTITION—*complainants in a partition suit are incompetent witnesses against their insane brother.* Complainants in a suit for partition of lands among themselves and their insane brother are incompetent to testify generally against the insane brother.

2. SAME—*voluntary partition may be avoided where one of the parties is an infant or lunatic.* Co-tenants may make partition of their lands by agreement and may resort to any method they think best where all are competent to act for themselves, but such a partition may be avoided where one of the parties is an infant or lunatic, particularly where it is unfair to such infant or lunatic.

3. SAME—*a voluntary partition which is not binding on all co-tenants is not binding on any of them.* A voluntary partition which is not binding on all the co-tenants is not binding on any of them, and, where such partition is made by deed, if it appears that some of the persons intended to be bound did not execute the deed and are not bound by the partition, those executing the deed are not affected by it and hold their moiety the same as before its execution was attempted.

4. SAME—*decree or judgment in partition has no effect on title of co-tenants.* A decree or judgment in partition has no other effect than to sever the unity of possession and does not vest in either of the co-tenants any new or different title than he had before.

5. SAME—*effect of a voluntary partition.* In a voluntary partition each party transfers or releases the interest which he had in all the land for an exclusive and fixed possession in a part, and one tenant in common does not derive title or interest from his co-tenant by such transfer.

6. SAME—*desire to make partition may be shown to be sole consideration for deeds of co-tenants.* Notwithstanding the general rule that the consideration for a deed cannot be questioned for the purpose of avoiding it, yet where there is an attempt to make a voluntary partition by deed it is competent to show that the sole consideration was to accomplish the partition, and if the attempted partition is void because one of the parties is insane the deeds may be set aside.

7. SAME—*guardian ad litem cannot consent to have incompetent evidence considered.* The guardian *ad litem* for an insane de-

fendant in a partition suit cannot agree or consent, as against his ward, to have incompetent evidence admitted in the trial court or considered in the Supreme Court.

8. WILLS—*when the entire disposition of an estate must fall.* Where valid and invalid portions of a will are so related to the general scheme of the testator as to be interdependent, so that they can not be separated without doing violence to the testamentary plan, the entire disposition of the estate must fall.

9. SAME—*when extrinsic evidence may be admitted to locate lands given in specific devises.* Where a will is complete on its face but does not locate the specific devises in the particular township and range in which the lands are situated, extrinsic evidence may be admitted to prove that the testator owned the identical lands described in a certain township and range and that he owned no other lands at the time of making the will.

10. SAME—*extrinsic evidence is admissible to show latent ambiguities.* Extrinsic evidence is admissible to determine the existence of latent ambiguities in a will and to enable the court to look upon the will in the light of the facts and circumstances surrounding the testator at the time it was made, for the purpose of determining his intention but not to contradict or add to its terms.

APPEAL from the Circuit Court of Coles county; the Hon. JOHN H. MARSHALL, Judge, presiding.

ALBERT C. ANDERSON, H. A. NEAL, and BEN F. ANDERSON, guardian *ad litem,* for appellants.

T. N. COFER, and C. M. HEINLEIN, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

William H. Cochran died November 2, 1915, leaving a will, the second clause of which reads as follows:

"*Second*—After the payment of such funeral expenses and debts, I give, devise and bequeath unto my wife, Catherine Cochran, all the real and personal property that I may own at the time of my decease, to have and to hold as her own during her natural life and at her decease to be equally divided with my five children,. Charles N., Frederick A., Clarence Mac., Dudley S. and Jesse E., to share

and share alike; Charles N. to have the west half of the west half of section 23; Dudley S. to have the east half of the west half of section 23; Clarence Mac. to have the southeast southeast 40 acres of section 23; Frederick A. southwest southwest of section 24, 40 acres; Jesse E. to have the northeast northeast of section 23. There is 40 acres in section 23 to be divided equally with Charles N., Frederick A., Dudley S. and Clarence Mac. The dwelling now occupied by me on lot 15, Parker's addition to Charleston, Ill., I give and bequeath to Jesse E. Cochran."

The widow died prior to the date of the death of the testator. The five sons named in the will were the only heirs of the deceased. All were adults and Frederick A. was insane. All of said sons except Frederick A., and who are appellees, filed a bill in the circuit court of Coles county, making Frederick A., Clarence Mac., as conservator of Frederick A., and Charles N. Cochran, as administrator with the will annexed of said testator, defendants. Appellees averred in their bill that the testator died seized of the southeast quarter, the south 10 acres of the southeast quarter of the northwest quarter, and the north 30 acres of the northeast quarter of the southwest quarter of section 23, and the southwest quarter of the southwest quarter of section 24, all in township 13, north, range 9, east of the third principal meridian, in Coles county, containing 240 acres, and also fifty-five feet off the west side of lot 15 of Parker's addition to the city of Charleston, in said county; that prior to his death he attempted to devise said lands, and that he owned no other lands than those described in the bill. The bill set out the will *in hæc verba,* and averred that there were many uncertainties and misdescriptions in the will and that it needs judicial construction; that the testator intended his heirs to take the real estate equally, and that that intention is the controlling feature of the will; that in furtherance of that intention the testator made a devise of various tracts, 160 acres to Dud-

ley, the east half of the west half of section 23, whereas testator only owned 40 acres thereof; that he did not own the west half of the west half of section 23 at the time he willed it to Charles N., and that he did not own the northeast quarter of the northeast quarter of section 23 which he willed to Jesse E.; that the house and lot in Charleston were devised to Jesse to equalize his share, as he was devised nothing in the extra 40 acres to be equally divided among the other four sons; that the said extra forty was without description, in that the town and range were omitted; that the southeast quarter of the southeast quarter of section 23 devised to Clarence, and the southwest quarter of the southwest quarter of section 24 devised to Frederick A., are described with uncertainty. The bill also avers that Frederick A. is insane, and that after the death of the said testator the other four children executed deeds to each other and to Frederick A. for such lands as they thought would rectify the faulty description; avers that the whole scheme of the will fails by reason of the fact that it fails to properly describe the shares of each son, and prays that the will may be construed as void and that a partition be made among said heirs as tenants in common and that said deeds may be set aside for want of consideration. A guardian *ad litem* was appointed to defend for the insane defendant, who filed his answer, upon which issue was joined, and upon evidence heard a decree was rendered for the relief prayed. Commissioners were appointed to make partition, and were directed to set off to Frederick A. the southwest quarter of the southwest quarter of section 24, 10 acres in the 40 acres described as the south 10 acres of the southeast quarter of the northwest quarter, and the north 30 acres of the northeast quarter of the southwest quarter of section 23, in township 13, north, range 9, east of the third principal meridian, together with such other parts of the lands of the testator as will amount to the full, equal, undivided one-fifth interest in all of the lands of the testator, and to make

an equal partition among the other four sons of all the remainder of said lands owned by the testator, and that they shall value each piece or tract separately and make report thereof to the court. The guardian *ad litem* prayed an appeal, and Frederick A. Cochran having subsequently died, his death has been suggested and his widow and minor children have joined in this appeal.

The only evidence in the record to support the averments in the bill consists of the oral testimony of Charles N. and Clarence Mac. Cochran and John T. Kincaid, and the documentary evidence of the deeds made by the heirs, together with the record of the probate of the will. The guardian *ad litem* objected to the testimony of Charles N. and Clarence Mac. Cochran at the time it was offered, on the ground that they were incompetent witnesses to testify against the insane defendant, Frederick A. Cochran, except as to the heirship of the testator. They testified, in substance, that they were sons of the testator, who died in November, 1915, and that he also left surviving him Frederick A., Dudley S. and Jesse E. Cochran, the said five sons being the only heirs-at-law him surviving; that he left no widow surviving him, the testator's wife, Catherine, having died before the testator; that at the time of his death he owned 240 acres of real estate, and they describe it by the same description as set forth in the bill and as is found in the decree of the court to have been owned by the said testator; that he owned the same 240 acres at the time he executed the said will, and that he did not own any other real estate at the time of his death except "what had been deeded away prior to his death;" that Frederick A. Cochran is insane and is in the asylum or hospital for the insane; that Clarence Mac. Cochran is conservator of Frederick A. Cochran, and that Charles N. Cochran is administrator under the will; that they, the witnesses, were parties to the deeds made by the heirs after the death of their father and that there was no consideration paid for the

same. Each of the said witnesses also testified that he was in possession of a certain part of said real estate by lease, one of which leases was an oral lease and the other a written lease given by said testator during his lifetime, which was introduced in evidence. The testimony of said two witnesses should have been rejected by the court on the ground that they were incompetent to testify against the insane brother, Frederick A. Cochran. *Holton* v. *Dunker*, 198 Ill. 407.

The substance of Kincaid's testimony is that he is an attorney at law and assisted in preparing the deeds interchanged among the Cochran heirs; that it was apparent that there was a mistake in the will of William H. Cochran, the testator having devised 160 acres each to Charles and Dudley and only owned 40 acres of the 160 acres devised to Dudley; that he devised to Jesse 40 acres that he did not own; that witness was acting as attorney for the heirs and advised the making of the deeds; that the object in making the deeds was "in order to try and get the interest of each one in the 240 acres that William H. Cochran died seized of, straightened out, and as nearly as possible to give to each one his share and his interest free from the other heirs;" that he does not know whether there was any consideration, in fact, paid by the parties to the deeds and that as far as he knows there was not; that the deeds were made according to the understanding "they seemed to have with their father before his death and also from the words of the will;" that the will devises the west half of the west half of section 23, and the words "southeast quarter" after the words "west half" were left out; that Dudley was to have the east half of the west half of that quarter; that as he understood it Charles was to have the west half of the west half of that quarter; that the children, at the time the deeds were executed, thought the land ought to be divided in forties; that he thinks Dudley and Charles

changed the descriptions, and that they may have made other changes from what they thought their father intended.

The heirs, except Frederick A., made five quit-claim deeds, by which Charles N. Cochran received a deed to the southwest quarter of the southeast quarter of section 23 from the other three grantors. Dudley S. Cochran received a deed to the northwest quarter of the southeast quarter of said section 23 from the other three grantors. Dudley S. Cochran and Jesse E. Cochran and their wives quit-claimed an undivided one-fourth interest to Frederick A. Cochran in the 10 acres off the south side of the southeast quarter of the northwest quarter and 30 acres off the north side of the northeast quarter of the southwest quarter of said section 23. Jesse E. Cochran quit-claimed the same lands described in said last deed to Dudley S., Charles N. and Clarence Mac. Cochran, and Dudley S. quit-claimed the same lands to Clarence Mac. Cochran and Charles N. Cochran; and finally Dudley S. Cochran, Clarence Mac. Cochran and Charles N. Cochran and their wives quit-claimed to Jesse E. Cochran the northeast quarter of the southeast quarter of said section 23.

From the foregoing it would appear that it was the understanding of the four sons who made deeds, or at least that they so stated to the attorney, that their father had indicated to them that he wanted Frederick A. to have the southwest quarter of the southwest quarter of section 24 and an undivided 10 acres out of the 40 acres composed of the 10 and 30-acre tracts, and that no deed was made to him for the southwest quarter of the southwest quarter of section 24 because the will was supposed to properly describe that tract; that Clarence Mac. was to have the southeast quarter of the southeast quarter of section 23 and an undivided interest in said 40 acres composed of the 10 and 30-acre tracts, and that no deed was made to the southeast quarter of the southeast quarter of section 23 to Clarence Mac. because that tract was supposed to be properly de-

scribed in the will.  For the same reason Jesse received no deed to the house and lot because it was properly described in the will, but did receive a deed to the northeast quarter of the southeast quarter of section 23 because the will improperly described the 40 acres that they had assumed were to be willed to him.  Upon the same theory that the shares of Charles N. and Dudley S. Cochran were improperly described in the will they received deeds to the forty and the undivided interest in the 40 acres composed of the 10 and 30-acre pieces that the heirs understood they were to receive by the will.  It is therefore fairly clear from the evidence that the four heirs who were competent to make deeds were simply attempting to make a partition of the 240 acres owned by their father according to their understanding of their father's intention by his will.  The partition failed because of the incompetency of their insane brother to assent to such a partition and to execute a deed to his brothers to complete the partition.  The complainants stipulated that all the deeds were without consideration and consented to a cancellation of them.  The evident meaning of the complainants is that the only consideration for the execution of the deeds was the partition of the premises according to the intent of the will as they understood it.

It is now the well settled doctrine in this jurisdiction that co-tenants may make partition of their lands by agreement and that they may resort to any method that seems to them best where they are all competent to act for themselves.  Such a partition may be avoided where one of the parties is an infant or lunatic, and particularly where it is unfair to such infant or lunatic.  The attempted partition in this case was inoperative and void because one of the parties was a lunatic, Frederick A. Cochran, and there is not even any proof that he attempted to enter into any agreement for partition or to make a deed to the other parties, and there is no proof that any of the parties took possession pursuant to the partition deeds.  It is well settled that

a voluntary partition which is not binding on all the co-tenants is not binding on any of them. (*Center* v. *Davis,* 113 Cal. 307; 45 Pac. Rep. 468; *Pacific Bank* v. *Hannah,* 90 Fed. Rep. 72.) Although such a partition may be made by deed, if it appears that some of the persons intended to be bound did not execute the deed and are not bound by the partition, those executing the deed are not affected by it and hold their moiety as before its execution was attempted. (30 Cyc. 165.) A decree or judgment in partition has no other effect than to sever the unity of possession and does not vest in either of the co-tenants any new or different title. After the partition each party has precisely the same title which he had before, but that which was before a joint possession is turned into a several one. The same is true of a voluntary partition. Each party transfers or releases the interest which he had in all the land for an exclusive and fixed possession in a part, and he does not derive title or interest from his co-tenant by such transfer so that either can be said to hold under the other. (*Wade* v. *Deray,* 50 Cal. 376; *Casstevens* v. *Casstevens,* 227 Ill. 547.) When partition is made by mutual deeds by co-tenants it is competent to show that their whole. purpose was to accomplish the partition and that no other consideration passed between the parties.

The proof in this case would be sufficient, upon the competent testimony of Kincaid, to warrant the court to set aside and cancel the deeds of complainants, even as against their lunatic brother, because made only in consideration of a partition of the premises which was void for the reasons aforesaid, if a bill had been framed upon that theory, and as no question of variance was raised we think it was sufficient under the bill in this case. It is the general rule that the consideration for a deed cannot be questioned,—*i. e.,* it cannot be shown that a deed was made without consideration for the purpose of avoiding it, as a deed under seal

imports consideration. But the reason for the rule, as above shown, does not exist in a voluntary partition by deed, where there is no attempt made to convey a title but simply to sever the joint possession.

The other part of the decree of the court is based upon the rule that where valid and invalid portions of a will are so related to the general scheme of the testator as to be interdependent, so that they cannot be separated without doing violence to the testamentary plan, the entire disposition of the estate must fall. (*Carpenter* v. *Hubbard,* 263 Ill. 571; *Eldred* v. *Meek,* 183 id. 26; *Lawrence* v. *Smith,* 163 id. 149; *Reid* v. *Voorhees,* 216 id. 236; *Johnson* v. *Preston,* 226 id. 447.) If the testimony in this record were all competent the decree of the circuit court might be affirmed. The evidence in the record, if competent, would entirely support that theory if the witnesses had further testified that the deceased owned no other lands except those set forth in the bill as owned by the testator at the time he executed the will, and that conclusion is warranted upon the testimony as given although that fact was not specifically testified to. It clearly appears from this will that the testator intended that each of his children should be given an equal share in his real estate. By the first provision, if the will had stopped with that provision, the real estate would have descended to the five sons the same as intestate property, each one receiving an equal undivided share therein. The testator, however, undertook to make that equal division himself by following the above provision in the same clause with specific devises to each of his five sons. There is nothing that appears upon the face of the will to indicate that he did not make a fairly equal distribution of the real estate, except that the tracts devised are not of equal size. The competent testimony in this record does not show that the shares devised are unequal in value. The will in this case is complete on its face, except that it does

not locate the specific devises in the particular township
and range in which the lands are situated. Extrinsic evi-
dence, however, might be offered to prove that he owned
the identical lands described in the specific devises in a cer-
tain township and range and that he owned no other lands
at the time of making the will. (*Graves* v. *Rose,* 246 Ill.
76.) Such evidence is also admissible to determine the ex-
istence of latent ambiguities in the will and to enable the
court to look upon the will in the light of the facts and
circumstances surrounding the testator at the time it was
made for the purpose of determining his intention, although
not to contradict or add to its terms. (*Whitcomb* v. *Rod-
man,* 156 Ill. 116.) It is contended by appellees that the
testimony in this record for that purpose showed that three
of the specific devises were void because they devised land
that the testator never owned and that it cannot be deter-
mined by the will and from this evidence what those spe-
cific devises are, and that for that reason they are void,
and that they render the whole will void because the main
scheme or plan of the will to divide all the real estate
equally among the five sons is thereby defeated. The com-
petent evidence does not support that contention, therefore
the decree is not sustained by the competent evidence in
this case.

All of the parties to this proceeding have insisted that
we pass upon the merits of this case and render a final de-
cision in this court, but it is not possible for the court to
do so. This court hears and determines cases on the rec-
ord, only. (*Chicago, Burlington and Quincy Railroad Co.*
v. *Lee,* 87 Ill. 454.) The guardian *ad litem* insists that
the incompetent evidence of the two complainants cannot
be considered. He cannot consistently do otherwise, as he
could not, as against his ward, even agree or consent that
such incompetent evidence be considered. *Gooch* v. *Green,*
102 Ill. 407.

The decree of the circuit court will therefore be reversed and the cause remanded for further proceedings in accordance with the views herein expressed, and with directions to allow complainants to amend their bill if they see fit to do so. *Reversed and remanded, with directions.*