(No. 11320.—Decree affirmed.)

MIRA A. ALFORD et al. Appellees, vs. JENNIE BENNETT
et al. Appellants.

*Opinion filed June 21, 1917.*

1. WILLS—*what is a latent ambiguity in a will.* A latent ambiguity is one which arises not upon the words of the will, deed or other instrument, as looked at in themselves, but upon those words when applied to the object or subject which they describe.

2. SAME—*oral evidence is admissible to enable court to understand circumstances surrounding testator.* The general rule is that oral proof is not admissible to reform, alter, detract from or add to the terms of a will, but the court may hear such evidence for the purpose of understanding the circumstances by which the testator was surrounded.

3. SAME—*it is presumed that a testator intended to devise all land owned.* It is presumed that a testator intended to devise land which he actually owned and that he intended to dispose of his whole estate unless such presumption is rebutted by the provisions of the will or evidence to the contrary, and the fact that there is no residuary clause will strengthen this presumption.

4. SAME—*when false description will be stricken out and devise sustained.* Where a testator owning the northwest quarter of section 17 devises "twenty-five acres of the northeast quarter of section 17," which quarter he did not own, if the extrinsic evidence and the other terms of the will show that twenty-five acres from the northwest quarter was the only land not otherwise devised, the words "of the northeast quarter" may be stricken out and the devise sustained as to "twenty-five acres of section 17."

5. SAME—*court should place itself in position of the testator in the light of surrounding circumstances.* The intention of a testator is found by construing the words employed in the will itself in the light of his circumstances and surroundings, and the court should, so far as possible, in the light of these circumstances, place itself in the position of the testator at the time the will was drawn.

6. SAME—*rule as to when a codicil will revoke provisions in the will.* There must be absolute inconsistency between the provisions of a will and those of a codicil in order to work a revocation, and if the provisions of the will and codicil can stand together there will be no revocation, as a gift by will cannot be taken away or modified by doubtful expressions but only by express words or necessary implication.

7. SAME—*will and codicil must be construed together.* A will and codicil should be so construed as to give effect to every word and every part thereof without change or modification, and the several clauses should be made to harmonize so as to give effect to every provision, provided such construction is not inconsistent with the general intent and purpose of the testator as gathered from the entire instrument.

8. SAME—*when devise creates a dry trust subject to operation of Statute of Uses.* Where a testator provides that land devised to his daughter, in the event of her death before her son is twenty-five years old, shall be held by the executors in trust for the son, the fee simple title to be vested in the son upon his reaching said age, the trust created is a dry trust subject to the operation of the Statute of Uses, by which the fee simple title is vested in the son, even to the extent that he may dispose of it before his arriving at the age of twenty-five.

9. SAME—*when costs and solicitor's fees may be paid out of the estate.* Where a testator has expressed himself so ambiguously as to make it necessary or advisable to go into a court of chancery to obtain a construction of the will it is proper to allow the costs and solicitor's fees to be paid out of the estate.

10. SAME—*when court may allow fee to guardian ad litem in absence of evidence of value of his services.* Where the trial court, in a proceeding to construe a will, is able to ascertain from its own knowledge, based on the evidence and records, the value of the services rendered by a guardian *ad litem,* it may allow a fee therefor without taking evidence as to the value of said services.

11. SAME—*counsel for infant defendants to suit to construe will must show, if partition is desired, that it is for infants' interest.* It devolves upon counsel for infant defendants to a suit to construe a will, if they wish the land to be partitioned, to show that it is for the infants' interest to grant the partition.

12. SAME—*an accounting on unpaid notes is not germane to suit to construe will.* It is the duty of the executor to collect any unpaid notes due his testator's estate; and an accounting thereon, being subject to the jurisdiction of the county court, is not germane to a suit to construe the testator's will.

13. SAME—*when court may refer a matter to a special master in suit to construe will.* Where it is clear that all the parties to a suit to construe a will have not had their day in court as to all questions involved the court may refer such matters to a special master to take additional evidence.

APPEAL from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

JOSEPH A. JENKINS, guardian *ad litem,* for appellants.

STEVENS R. BAKER, BERT W. ADSIT, and E. A. AGARD, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

A bill was filed by some of the appellees herein in the circuit court of Livingston county praying for the construction of the will and codicil of David S. Crum, deceased, and for the ascertaining and determination of the interests of certain parties thereunder in the estate of the testator, and for the construction and determination of the provisions and conditions of certain trust estates created thereby. After a hearing the circuit court entered a decree construing said will and codicil. This appeal is prosecuted from that decree.

It is first insisted by appellants that the trial court erred in construing that portion of the eighth paragraph of the will which reads: "I give, devise and bequeath to my daughter Mira A. Alford the north twenty-five acres of the northeast quarter of section 17, in Belle Prairie township, Livingston county, Illinois," also certain lands in Indiana. The testator at the time of making his will, in 1905, was the owner of the northwest quarter, the east half of the southwest quarter, the west half of the southeast quarter and the northeast quarter of the southeast quarter, all in section 17, township 35, north, range 6, east of the third principal meridian, in the town of Belle Prairie, in said county. He also owned at that time a quarter section in section 9, in another township in said county. The testator, at the time of making his will, owned no part of the northeast quarter of section 17, in said Belle Prairie township, but he did then own all of the northwest quarter of said section 17. In the first seven paragraphs of the will the testator, before making the devise in the eighth paragraph, had devised to his children all his real estate in the State

of Illinois excepting only the north twenty-five acres of the
northeast quarter of the northwest quarter of said sec-
tion 17. In the seventh paragraph, immediately preceding
the devise to said Mira, the testator devised to his daugh-
ter Lina fifteen acres "off the south side of the northeast
quarter of the northwest quarter of section 17," etc., leav-
ing remaining, as undisposed of, the north twenty-five acres
of said northeast quarter of the northwest quarter.

Counsel for appellants insists that a devise of real es-
tate which the testator is alleged not to have owned is not
effective to carry to the devisee real estate the testator did
own at the time of his death; that wills cannot be reformed
to express the supposed intention not appearing in said will.
Appellants rely in support of this contention upon the fol-
lowing cases decided by this court: *Kurtz* v. *Hibner*, 55 Ill.
514; *Bishop* v. *Morgan*, 82 id. 351; *Bingel* v. *Volz*, 142
id. 214; *Williams* v. *Williams*, 189 id. 500; *Vestal* v. *Gar-
rett*, 197 id. 398; *Lomax* v. *Lomax*, 218 id. 629; *Clancy*
v. *Clancy*, 250 id. 297; *Lawrence* v. *Lawrence*, 255 id.
365, and especially upon *Graves* v. *Rose*, 246 id. 76, where
the previous decisions of this court are reviewed and dis-
tinguished. Counsel for appellees contend that the trial
court, in the light of the extrinsic evidence introduced in
the record, rightly construed said section 8 of the will, on
the ground that while the words of the will cannot be added
to, yet so much as is false may be stricken out if enough
remains, when read and construed in the light of the facts
and circumstances and with the false words eliminated, to
identify the property,—citing and relying on the following
decisions in this State as upholding this contention: *Decker*
v. *Decker*, 121 Ill. 341; *Huffman* v. *Young*, 170 id. 290;
*Whitcomb* v. *Rodman*, 156 id. 116; *Douglas* v. *Bolinger*,
228 id. 23; *Felkel* v. *O'Brien*, 231 id. 329; *Gano* v. *Gano*,
239 id. 539, and especially, also, upon the reasoning of
*Graves* v. *Rose, supra,* where this court, in reviewing *Decker*
v. *Decker, supra,* approves (as claimed by counsel for ap-

pellees) the reasoning of that decision, which makes the case of *Graves* v. *Rose, supra,* especially applicable to the facts of this case. Counsel for appellees also insist that the extrinsic evidence offered was admissible to determine the existence of a latent ambiguity in the will, and to enable the court to look upon the will in the light of the surroundings and circumstances of the testator at the time it was made; for the purpose of determining his intention but not to change its terms. *Decker* v. *Decker, supra; Cochran* v. *Cochran,* 277 Ill. 244.

A latent ambiguity has been defined as one "which arises not upon the words of the will, deed or other instrument, as looked at in themselves, but upon those words when applied to the object or subject which they describe." (2 Am. & Eng. Ency. of Law,—2d ed.—288.) It was said by this court in *Decker* v. *Decker, supra,* on page 350, that a latent ambiguity can only arise by evidence *dehors* the record, and it is frequently stated that because of this fact extrinsic evidence *dehors* the record, of the same character, may be resorted to for its removal. (2 Underhill on Wills, sec. 910; 2 Am. & Eng. Ency. of Law,—2d ed.— 296.) In *Patch* v. *White,* 117 U. S. 210, the court said a latent ambiguity which may be removed by extrinsic evidence may arise either when the will names a person as the object of a gift or a thing as the subject of it, and there are two persons or things that answer such name or description, or, second, when the will contains a misdescription of the object or subject, as where there is no such thing in existence, or if in existence the person is not the one intended or the thing does not belong to the testator; and it was said in that case (p. 217) : "Where it consists of a misdescription, as before stated, if the misdescription can be struck out and enough remain in the will to identify the person or thing the court will deal with it in that way, or if it is an obvious mistake will read it as if corrected. The ambiguity in the latter case consists in the

repugnancy between the manifest intent of the will and the misdescription of the donee or the subject of the gift. In such a case evidence is always admissible to show the condition of the testator's family and estate and the circumstances by which he was surrounded at the time of making his will." It has been said in discussing this question, that some courts and authorities have incorrectly attempted to make a distinction between patent and latent ambiguities as to the admissibility of extrinsic evidence. A very instructive discussion on this subject is found in Page on Wills, in section 823. "Where the words of a will, aided by evidence of the material facts of the case, are insufficient to determine the testator's meaning, no evidence will be admissible to prove what the testator intended and the will will be void for uncertainty." (Wigram on Wills, proposition 6, p. 175.) "It often becomes necessary to prove by extrinsic evidence whether or not the testator had property answering to the exact description in the will, and if not, what property he did have which sufficiently answers such description. The books abound in cases in which wills have been upheld although the subject matter has been indefinitely or inaccurately described." (Jones on Evidence,— 2d ed.—sec. 476.) "Although a latent ambiguity does not usually render the instrument void, yet it may be as fatal as a patent ambiguity. This is true where the extrinsic evidence proves entirely unsatisfactory and results in leaving the matter wholly to conjecture." (Jones on Evidence,—2d ed.—sec. 472.) "While extrinsic evidence of the circumstances, situation and surroundings of the testator and of his property is legitimate to place the court which expounds the will in the situation of the testator and thus to enable the court to understand the meaning and application of his language, yet the intention must be determined from the language of the instrument as explained by such extrinsic evidence, and no proof, however conclusive in its nature, can be admitted with a view of setting up an in-

tention inconsistent with the writing itself." *Whitmore* v. *Learned,* 70 Me. 276; Jones on Evidence,—2d ed.—sec. 475, and cited cases; 19 Am. Law Reg. (N. S. 10) 93, note 97.

There can be no question that under our decisions and by the weight of authority in other jurisdictions the general rule is that oral proof is not admissible to reform, alter, detract from or add to the terms of a will, but the court may hear such evidence for the purpose of understanding the circumstances by which the testator was surrounded. As was said in *Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561, on page 564: "The object of the evidence was to place before the court the circumstances attending the execution of the will in support of and in aid of the intention of the testator as declared in the will, and the court, in the exercise of its discretion, had the right to hear such evidence."

We shall not attempt to set out in detail the descriptions in the various cases decided by this court which have been held insufficient to be aided by extrinsic testimony and those that have been held sufficient to be so aided. In the light of the reasoning and the facts in the various cases we think the case of *Decker* v. *Decker, supra,* is as nearly like this case as any of those decided by this court. That will devised twenty acres off the west half of the northeast quarter of the northeast quarter of section 33, (also other land,) all in township 18, north, range 11, west of the third principal meridian. The testator did not own land in the northeast quarter of the northeast quarter of said section 33 but did own the northwest quarter of the northeast quarter of said section. The court rejected part of the description as being false and held that the devise was of that portion which the testator did own, saying, on page 352, among other things: "On the face of the will the subject matter of the devise is clear, but on inquiry it is found that the descriptive words of the devise are, in part, false. The parcel of land ap-

pearing to be devised did not belong to the testator. If, then, we may strike out of the description of the premises appearing to be devised so much as is false, and enough remain in the will, interpreted in the light of surrounding circumstances at the time the will was made, to identify the premises devised, this case will fall within the class of cases of which [certain cases cited] are examples, as to the subject devised." The court further said (p. 355) : "We can not doubt, in the light of these facts, that the parcel of land in the mind of the testator when he made his will was the twenty acres off the west half of the northwest quarter of the northeast quarter of section 33, town 18, range 11, because this tract of forty acres was the only tract owned by him lying in the northeast quarter of said section, or, indeed, anywhere in the section. This conclusion is reached, not by adding to the terms of the will,—not by inserting what was by mistake left out of the will and thereby reforming it,—but by rejecting, or refusing to give effect to, the words 'of the northeast quarter,' where they occur for the first time in the description. And this rejection is made because it is conclusively shown that to this extent the description of the devise is false in fact." So in this case, if the false part of the description is omitted, so as to leave the devise "to my daughter Mira A. Alford twenty-five acres of section 17, in Belle Prairie township, Livingston county, Illinois," when considered in the light of the circumstances surrounding the testator at the time, the land intended to be devised is clearly identified. The testator, in the prior provisions of the will, had disposed of all his lands in the State of Illinois except twenty-five acres, and this twenty-five acres was located in section 17, and was the only property owned by him which would answer that description. In the previous paragraph this will had disposed of fifteen acres off the south side of the northeast quarter of the northwest quarter of said section 17, there remaining undisposed of only the north twenty-five acres

of said northeast quarter of the northwest quarter of said section belonging to him in the State of Illinois. We think it is clear from all the surrounding facts and circumstances, in connection with the wording of the will, that he intended to dispose of this last described twenty-five acres. It is to be presumed that the testator intended to devise land which he actually owned. (*Decker* v. *Decker, supra.*) It is also presumed that he intended to dispose of his whole estate unless such presumption is rebutted by the provisions of the will or evidence to the contrary. (*Whitcomb* v. *Rodman, supra; King* v. *King;* 168 Ill. 273; *Lewis* v. *Sedgwick,* 223 id. 213.) The fact that there was no residuary clause in this will strengthens this presumption. (*Felkel* v. *O'Brien, supra.*) This conclusion is also strengthened by the fact that the will described the quantity of the land to be devised under said paragraph 8 of the will, this court having said in *Graves* v. *Rose, supra,* on page 84, "where the subject of a devise is described by quantity it may be identified by extrinsic proof," citing in support of this conclusion several other decisions of this court. Construing all this will together, in connection with the description in paragraph 7, and in the light of the extrinsic evidence, the conclusion seems inevitable that the decree of the lower court correctly held that the land in question was intended to be devised under said paragraph 8.

It is also contended by counsel for appellants that the trial court improperly construed the will and codicil with reference to certain notes therein referred to. Paragraph 7 of the will provided, after bequeathing certain lands to his daughter Lina E. Buckwalter, that he gave to her "her note dated June 17, 1903, said note being in the sum of $5967. Said above named notes shall be treated as paid by the maker thereof and canceled as of the date of this will." The eighth paragraph contains the following provision in favor of Mira A. Alford: "I also give to my said daughter her two notes, one dated December 1, 1902, in the sum of

$2837.38, and one dated December 31, 1904, in the sum of $612.54. Said above named notes shall be treated as paid by the maker thereof and canceled as of the date of this will." The first clause of the codicil provides as follows: "It is my will that any note or notes given by any of my children to me, or that I have signed with any of my children, either as security or as joint maker, remaining unpaid at the time of my death, shall be charged specifically to the bequest made by me in my will to such child or children. The husband of my child who may have been the beneficiary of the proceeds of any note or notes shall be considered the agent of his wife and her bequest charged with the amount of the note or notes. It being my will and desire to charge specifically to the bequest of any child the amount owing to me or for which I may be liable on such child's account and my general estate relieved from any liability on account of any said note or notes." It is insisted by counsel for appellants that this provision of the codicil revoked the provisions as to the notes in paragraphs 7 and 8 of the will. "It is fundamental that in construing wills the constant effort of the court is to give effect to the true intention and meaning of the testator as expressed by the language used in his will, and this is to be ascertained from a consideration of the will in all of its parts and details, bearing in mind the scope and plan of the testator as expressed by the whole will." (*Black* v. *Jones,* 264 Ill. 548.) "The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." (*Wardner* v. *Baptist Memorial Board,* 232 Ill. 606; *Bradsby* v. *Wallace,* 202 id. 239.) The intention of the testator is found by construing the words employed in the will itself, in the light of his circumstances and surroundings. The court should, so far as possible, in the light of these circumstances, place itself in the position of the testator at the time the will was drawn, and be

guided by the light thus thrown on the testamentary scheme to assist in arriving at the intention of the testator. *O'Hare v. Johnston,* 273 Ill. 458.

The evidence in the record tends to show that the notes referred to in paragraphs 7 and 8 signed by his daughters, Lina and Mira, were the only notes which the testator held against any of the children on August 8, 1905, when he executed the original will. It is also apparent that he took these notes into consideration in the distribution of his estate, as by canceling them he gave substantially the same amount to each of his children; that if these notes were not so considered as a part of the legacies to these two daughters they would receive a much smaller share than any of the other children; that subsequently, and prior to the execution of the codicil, the testator took other notes from his children, several of which were apparently unpaid at the time of his death. From the wording of the codicil it would appear that during such period the testator had also signed some notes as security or joint maker for some of his children, but if so, they evidently had been paid before his death. Subsequent to the execution of the codicil the testator took several other notes from certain of his children and the husbands of others, which were unpaid when he died. After the death of the testator these notes which he had taken after the execution of the codicil were found among his effects. The note of Lina E. Buckwalter, devised to her by the seventh clause of the will, was attached to the will, being pinned to the seventh clause. The notes devised to his daughter Mira by the eighth clause of the will were not found among his effects after his death and do not seem to have been in his possession at any time after the execution of the original will. The trial court in its decree found it was the intention of the testator, by his will and codicil, to so divide his estate that his various children would share in approximately equal proportions, and that it was not his intention by his codicil to revoke the

279 — 25

bequests of the notes signed by his daughters, Mira and Lina, referred to in the seventh and eighth paragraphs of the will or to charge such notes against the lands devised to them; that said notes were to be treated as paid by the makers and canceled as of the date of the original will.

In construing the testator's meaning with reference to the proper construction of sections 7 and 8 of the will in connection with section 1 of the codicil with reference to the notes to the daughters, Lina and Mira, counsel for appellants suggests that this fact has some bearing upon the proper construction of those sections: that section 8 devised to the daughter Mira certain land in White county, Indiana, and that the record shows that this land had been sold by the testator prior to his death and the proceeds applied by him on the payment of the note signed by the daughter Mira with the testator as surety, and that at the testator's death there was a balance due on this note of $2000. If we understand the argument of counsel, it is that this payment on this note should be declared a charge against the bequest of the daughter Mira. We cannot agree with this argument. It seems to us that the sale of this land and application of the proceeds to another note tends to uphold the conclusion of the circuit court that the notes referred to by the testator under paragraph 8 of the will as being given to his daughter Mira were not intended to be included or referred to in section 1 of the codicil. The codicil does not expressly revoke the will as to the gifts in clauses 7 and 8 of the will. The rule is, that there must be absolute inconsistency between the provisions of the instruments in order to work a revocation, and if the provisions of the will and codicil can stand together there will be no revocation. (*Meckel* v. *Johnson,* 231 Ill. 540; *McKinstry* v. *Price,* 263 id. 626.) There were plain gifts by these provisions of the will as to the two daughters. These cannot be taken away or modified by doubtful expressions but only by express words or necessary implication. (*Lovering* v.

*Balch,* 210 Mass. 105; *Roberts* v. *Roberts,* 140 Ill. 345.)
A will and codicil should be so construed as to give effect
to every word and every part thereof without change or
modification, and the several clauses should be made to har-
monize so as to give effect to every provision, provided such
construction is not inconsistent with the general intent and
purpose of the testator as gathered from the entire instru-
ment. (*Griffiths* v. *Griffiths,* 198 Ill. 632; *Terhune* v. *Com-*
*mercial Nat. Safe Deposit Co.* 245 id. 622.)   It is only
by absolutely ignoring the bequests in said paragraphs 7
and 8 of the will giving to the two daughters the notes in
question that any possible argument can be made that there
is any inconsistency between the will and the codicil with
reference to the notes.   Giving the construction to the will
and codicil with reference to these notes that was given
by the decree, allows the natural meaning to the words of
paragraphs 7 and 8 with reference to these notes and gives
a reasonable meaning also to clause 1 of the codicil.   We
think it appears clearly from the entire testamentary plan
of the testator that he intended to divide his property sub-
stantially in equal parts among his children, or their respec-
tive heirs, *per stirpes.*   We think it is clear, also, from
reading the will and codicil together in the light of the sur-
rounding circumstances, that the testator did not intend to
revoke, by the provisions of the codicil heretofore quoted,
the bequest of the notes referred to in the seventh and
eighth clauses of the will to his daughters, Lina and Mira.
This being so, the conclusion follows that the trial court
rightly construed the will in that regard.

In this connection, as we understand the argument of
counsel for appellants, he insists that even though the notes
themselves should be held as being given by the testator,
under clauses 7 and 8, to the two daughters, the interest on
the notes should be reckoned to the date of the testator's
death and charged against the shares of the two daughters.
This argument is without merit.   If the testator intended

to give the notes to the daughters he clearly intended to give them the interest as well.

Counsel for appellants further insists that the trial court did not rightly construe the provision of the tenth paragraph of the will which reads as follows: "In the event of the death of my daughter Lina E. Buckwalter before her son shall arrive at the age of twenty-five years, then it is my will that my executors shall hold all real estate herein conveyed to my said daughter in trust for her son, and upon the son of my said daughter arriving at the age of twenty-five years fee simple title shall vest in him. And should said son desire to farm said land before he shall arrive at the age of twenty-five years it is my will and desire that my executors permit him to do so." The testator's daughter Lina died October 15, 1905, about two months after the execution of the will, leaving as her only heir her son, appellee David McDonald, who was then a minor but who became of age in 1916. The decree construed this provision of the will as being merely an attempt of the testator to prevent David McDonald, before he should become twenty-five years of age, from disposing of what would otherwise be an absolute devise to the daughter Lina, and held that this wording of the will subjected this provision to the Statute of Uses and passed the fee to David McDonald, even to the extent that he might dispose of it before he was twenty-five years of age; that the trust created was a dry trust, by virtue of which a fee simple title was vested in David McDonald. Under the holding of this court in *Drake* v. *Steele,* 242 Ill. 301, and cases there cited, (see, also, *Palmer* v. *City of Chicago,* 248 Ill. 201,) the decision of the trial court as to the proper construction to be put upon the tenth paragraph of the will must be held to be correct. We do not think there is any merit in the argument of counsel for appellants that under the wording of this clause the testator intended to create a spendthrift trust as to the interest of David McDonald.

Counsel for appellants further suggests some doubt as to the construction of paragraph 10 with reference to the meaning of the provision of the said paragraph as to the daughter dying before her son reaches the age of twenty-five years, and as to whether the testator intended this provision to apply only in case the daughter died before the testator. Counsel seems to conclude that under the rulings of this court in *Fifer* v. *Allen,* 228 Ill. 507, and *Lachenmyer* v. *Gehlbach,* 266 id. 11, this provision should be so construed that the devise will take effect in case of the death of the first taker either before or after the death of the testator. We agree with this conclusion but do not see what bearing it has on the argument of counsel for appellants. In our judgment it tends to confirm the construction that the trial court placed upon this paragraph of the will, rather than the contrary.

Counsel for appellants also insists that the court erred as to the solicitor's and guardian *ad litem's* fees. This court has repeatedly held that where a testator has expressed himself so ambiguously as to make it necessary or advisable to go into a court of chancery to obtain a construction of the will it is proper to allow the costs and solicitor's fees to be paid out of the estate. *Lombard* v. *Witbeck,* 173 Ill. 396; *Guerin* v. *Guerin,* 270 id. 239.

Appellants also insist that Stevens R. Baker, guardian *ad litem* for David McDonald, in the absence of evidence as to the value of his services, should not have been allowed a fee by the court. The court below in its decree stated that it based its allowance upon the evidence and records and the court's own knowledge of the services rendered by the guardian *ad litem.* In *Baker* v. *Baker,* 202 Ill. 595, where an allowance to the guardian *ad litem* was sustained, the court said (p. 621) : "We find no evidence in the record on that subject. * * * It is the duty of the court to see that he [the guardian *ad litem*] makes all proper defenses. He must act under the directions of the court. It

must therefore be presumed that the chancellor had knowledge of the services rendered by [the guardian *ad litem*] and the reasonable value of such services. He could, in the exercise of his legal discretion, make the allowance, and in the absence of evidence tending to show an abuse of that discretion we cannot say the allowance was unreasonable." The reasoning in that case must be held conclusive on this point on this record.

Counsel for appellants further insists that the executor of the testator's will, George H. Bennett, was an incompetent witness. He was a son-in-law of the testator, his wife being a daughter of Crum and one of the devisees under the will. This litigation is different from the litigation to contest the validity of the will, for then he might have been interested to the extent of his commissions, but here he had no interest of any kind or character as to the construction of the will. His wife was interested in the result of the suit, being one of the devisees, but the litigation concerned her separate property, and he was called on behalf of certain appellees whose interests were adverse to the interests of Mrs. Bennett. Mrs. Bennett would have been competent to testify adversely to her own interests in behalf of Mrs. Alford and Mrs. Buckwalter, and her husband, therefore, under the statute, was competent to testify against his wife's interest the same as she would have been. See *Pyle* v. *Pyle,* 158 Ill. 289, and authorities there cited; *Freeman* v. *Freeman,* 62 id. 189.

Counsel for appellants further argues that the court erred in sustaining demurrers to their cross-bill filed as guardians *ad litem* of Ivan Crum and Ira Crum, infant defendants and grandchildren of the testator. The cross-bill of these defendants set out at length the construction which said guardian *ad litem* desired to be placed on said will and prayed that the court would so construe the will. It further raised questions with reference to the promissory notes heretofore considered, apparently with reference to an ac-

counting as to the promissory notes referred to by paragraph 1 of the codicil, and further prayed for a partition of the lands devised by the testator to his widow for life with remainder to his children, and of the lands devised to the testator's daughters, Mira and Lina. Of course, there can be no question that under the original bill the infant defendants were entitled to a construction of the will, but they could gain nothing more along that line by filing a cross-bill, therefore the cross-bill on this point was unnecessary. *Thomas* v. *Thomas,* 250 Ill. 354.

It is most earnestly insisted that the infant defendants were entitled, as a matter of right, to partition. This contention of appellants cannot be sustained. If these infants had been adults then there might be some force in this argument. This court said in *Hartmann* v. *Hartmann,* 59 Ill. 103: "A general superintendence of infants is now exercised in courts of chancery as a branch of general jurisdiction. Indeed, it is one of the peculiar duties of courts of equity to protect the rights of infants. From the earliest period courts of chancery have been vested with a broad and comprehensive jurisdiction over the persons and property of infants. (*Cowles* v. *Cowles,* 3 Gilm. 435; *Grattan* v. *Grattan,* 18 Ill. 167; *King* v. *King,* 15 id. 187.) The power and duty of the courts in this regard are clearly shown by Judge Story. (2 Eq. Jur. chap. 35.) He says: 'Whenever a suit is instituted in the court of chancery relative to the person and property of the infant, although he is not under any general guardian appointed by the court, he is treated as a ward of the court and as being under its especial cognizance and protection.' This proceeding has been instituted in behalf of the minors. No reason has been shown why partition should be granted. We cannot perceive that it would be for the interests of the minors to grant the division." To the same effect see *Ames* v. *Ames,* 148 Ill. 321, and *Miller* v. *Lanning,* 211 id. 620. The cross-bill, setting out the will and codicil in full, under the

construction we have given thereto, showed on its face that the cross-complainants were not entitled to a division of the lands devised to Mira A. Alford and David McDonald. Under the ruling of this court we think it is clear that it devolved upon counsel for the infant defendants, if they wished the land to be partitioned, to show that it was for said infants' interest to grant the partition. No attempt was made to make any such showing, and, as in the case of *Hartmann* v. *Hartmann, supra,* we perceive no reason why it would be for the interest of said minor defendants to grant the partition. On the contrary, in view of the life estates to which the land would have to be subject and the multiplicity of interests involved, we are disposed to think, on the record before us, that it would not be for the best interest of the minors to have the estate partitioned. As to the right to have an accounting as to the notes under the cross-bill, the estate was in process of administration in the county court. It is the duty of the executor to collect any unpaid notes, and an accounting thereon was clearly subject to the jurisdiction of the county court and therefore not germane to a suit to construe a will. (*Russell* v. *Hilton*, 80 N. Y. App. Div. 178, affirmed in 175 N. Y. 525.) As we understand this record, there was no error in sustaining the demurrer to the cross-bill of the infant defendants, Ivan Crum and Ira Crum.

Counsel for appellants further insists that the court erred in re-referring the cause to the special master on June 19, 1916, to take additional evidence, claiming that the parties had already "had their day in court," and that the additional evidence was taken without authority of law, as the prior report of the evidence by the master was not set aside and the entire case re-referred to him. The order of the court objected to reads: "It appearing to the court from an examination of the evidence taken before the special master in chancery that the proof is insufficient as to the ownership of certain lands at the date of the execution

of the will of David S. Crum, deceased, upon the court's own motion, therefore, it is ordered that this cause be and the same is hereby again referred to the special master in chancery, with the direction to take record or documentary proof of the title and ownership at said time of said lands." It is clear that at this time the parties had not had their day in court as to all questions involved, and the court was fully authorized to re-refer the matter to the special master to take additional evidence. We do not think anything was said by this court in *Brueggestradt* v. *Ludwig*, 184 Ill. 24, that in any way conflicts with this conclusion.

We find no reversible error in the record, and the decree of the circuit court will be affirmed.

*Decree affirmed.*